## BRADWELL *v.* THE STATE.

1. The Supreme Court of Illinois having refused to grant to a woman a license to practice law in the courts of that State, on the ground that females are not eligible under the laws of that State; *Held,* that such a decision violates no provision of the Federal Constitution.

2. The second section of the fourth article is inapplicable, because the plaintiff was a citizen of the State of whose action she complains, and that section only guarantees privileges and immunities to citizens of other States, in that State.

3. Nor is the right to practice law in the State courts a privilege or immunity of a citizen of the United States, within the meaning of the first section of the fourteenth article of amendment of the Constitution of the United States.

4. The power of a State to prescribe the qualifications for admission to the bar of its own courts is unaffected by the fourteenth amendment, and this court cannot inquire into the reasonableness or propriety of the rules it may prescribe.

IN error to the Supreme Court of the State of Illinois.

Mrs. Myra Bradwell, residing in the State of Illinois, made application to the judges of the Supreme Court of that State for a license to practice law. She accompanied her petition with the usual certificate from an inferior court of her good character, and that on due examination she had been found to possess the requisite qualifications. Pending this application she also filed an affidavit, to the effect " that she was born in the State of Vermont; that she was (had been) a citizen of that State; that she is now a citizen of the United States, and has been for many years past a resident of the city of Chicago, in the State of Illinois." And with this affidavit she also filed a paper asserting that, under the foregoing facts, she was entitled to the license prayed for by virtue of the second section of the fourth article of the Constitution of the United States, and of the fourteenth article of amendment of that instrument.

The statute of Illinois on the subject of admissions to the
bar, enacts that no person shall be permitted to practice as
an attorney or counsellor-at-law, or to commence, conduct,
or defend any action, suit, or plaint, in which he is not a
party concerned, in any court of record within the State,
either by using or subscribing his own name or the name
of any other person, without having previously obtained a
license for that purpose from some two of the justices of the
Supreme Court, which license shall constitute the person
receiving the same an attorney and counsellor-at-law, and
shall authorize him to appear in all the courts of record
within the State, and there to practice as an attorney and
counsellor-at-law, according to the laws and customs thereof.

On Mrs. Bradwell's application first coming before the
court, the license was refused, and it was stated as a suffi-
cient reason that under the decisions of the Supreme Court
of Illinois, the applicant—"as a married woman would be
bound neither by her express contracts nor by those implied
contracts which it is the policy of the law to create between
attorney and client." After the announcement of this de-
cision, Mrs. Bradwell, admitting that she was a married
woman—though she expressed her belief that such fact did
not appear in the record—filed a printed argument in which
her right to admission, notwithstanding that fact, was ear-
nestly and ably maintained. The court thereupon gave an
opinion in writing. Extracts are here given:

"Our statute provides that no person shall be permitted to
practice as an attorney or counsellor at law without having
previously obtained a license for that purpose from two of the
justices of the Supreme Court. By the second section of the
act, it is provided that no person shall be entitled to receive a
license until he shall have obtained a certificate from the court
of some county of his good moral character, and this is the only
express limitation upon the exercise of the power thus intrusted
to this court. In all other respects it is left to our discretion to
establish the rules by which admission to this office shall be de-
termined. But this discretion is not an arbitrary one, and must
be held subject to at least two limitations. One is, that the

court should establish such terms of admission as will promote
the proper administration of justice; the second, that it should
not admit any persons or class of persons who are not intended
by the legislature to be admitted, even though their exclusion
is not expressly required by the statute.

"The substance of the last limitation is simply that this im-
portant trust reposed in us should be exercised in conformity
with the designs of the power creating it.

"Whether, in the existing social relations between men and
women, it would promote the proper administration of justice,
and the general well-being of society, to permit women to en-
gage in the trial of cases at the bar, is a question opening a
wide field of discussion, upon which it is not necessary for us
to enter. It is sufficient to say that, in our opinion, the other
implied limitation upon our power, to which we have above
referred, must operate to prevent our admitting women to the
office of attorney at law. If we were to admit them, we should
be exercising the authority conferred upon us in a manner
which, we are fully satisfied, was never contemplated by the
legislature.

"It is to be remembered that at the time this statute was
enacted we had, by express provision, adopted the common law
of England, and, with three exceptions, the statutes of that
country passed prior to the fourth year of James the First, so
far as they were applicable to our condition.

"It is to be also remembered that female attorneys at law
were unknown in England, and a proposition that a woman
should enter the courts of Westminster Hall in that capacity,
or as a barrister, would have created hardly less astonishment
than one that she should ascend the bench of bishops, or be
elected to a seat in the House of Commons.

"It is to be further remembered, that when our act was passed,
that school of reform which claims for women participation in
the making and administering of the laws had not then arisen,
or, if here and there a writer had advanced such theories, they
were regarded rather as abstract speculations than as an actual
basis for action.

"That God designed the sexes to occupy different spheres of
action, and that it belonged to men to make, apply, and execute
the laws, was regarded as an almost axiomatic truth.

"In view of these facts, we are certainly warranted in saying

that when the legislature gave to this court the power of granting licenses to practice law, it was with not the slightest expectation that this privilege would be extended to women."

The court having thus denied the application, Mrs. Bradwell brought the case here as within the twenty-fifth section of the Judiciary Act, or the recent act of February 5th, 1867, amendatory thereto; the exact language of which may be seen in the Appendix.

*Mr. Matthew Hale Carpenter, for the plaintiff in error:*

The question does not involve the right of a female to vote. It presents a narrow matter:

'Can a female citizen, duly qualified in respect of age, character, and learning, claim, under the fourteenth amendment,* the privilege of earning a livelihood by practicing at the bar of a judicial court?

The original Constitution said:

"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

Under this provision each State could determine for itself what the privileges and immunities of its citizens should be. A citizen emigrating from one State to another carried with him, not the privileges and immunities he enjoyed in his native State, but was entitled, in the State of his adoption, to such privileges and immunities as were enjoyed by the class of citizens to which he belonged by the laws of such adopted State.

But the fourteenth amendment executes itself in every State of the Union. Whatever are the privileges and immunities of a citizen in the State of New York, such citizen, emigrating, carries them with him into any other State of the Union. It utters the will of the United States in every State, and silences every State constitution, usage, or law which conflicts with it. If to be admitted to the bar, on attaining the age and learning required by law, be one of the

---

* See the Amendment, *supra*, pp. 43, 44.

privileges of a white citizen in the State of New York, it is equally the privilege of a colored citizen in that State; and if in that State, then in any State. If no State may "make or enforce any law" to abridge the privileges of a citizen, it must follow that the privileges of all citizens are the same.

Does admission to the bar belong to that class of privileges which a State may not abridge, or that class of political rights as to which a State may discriminate between its citizens?

It is evident that there are certain "privileges and immunities" which belong to a citizen of the United States as such; otherwise it would be nonsense for the fourteenth amendment to prohibit a State from abridging them. I concede that the right to vote is not one of those privileges. And the question recurs whether admission to the bar, the proper qualification being possessed, is one of the privileges which a State may not deny.

In *Cummings* v. *Missouri*,[*] this court say:

"The theory upon which our political institutions rest is, that all men have certain inalienable rights—that among these are life, liberty, and the pursuit of happiness; and that in the pursuit of happiness *all avocations, all honors, all positions, are alike open to every one, and that in the protection of these rights all are equal before the law.* Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined."

In *Ex parte Garland*,[†] this court say:

"The profession of an attorney and counsellor is not like an office created by an act of Congress, which depends for its continuance, its powers, and its emoluments upon the will of its creator, and the possession of which may be burdened with any conditions not prohibited by the Constitution. Attorneys and counsellors are not officers of the United States; they are not elected or appointed in the manner prescribed by the Constitution for the election and appointment of such officers. They are officers of the court, admitted as such by its order, *upon*

---

[*] 4 Wallace, 321.           [†] Ib. 378.

*evidence of their possessing sufficient legal learning and fair private character.* . . . The order of admission is the judgment of the court, that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, *and can only be deprived of it for misconduct, ascertained and declared by the judgment of the court, after opportunity to be heard has been offered.*"[*]

It is now settled by numerous cases,[†] that the courts in admitting attorneys to, and in expelling them from, the bar, act judicially, and that such proceedings are subject to review on writ of error or appeal, as the case may be.

From these cases the conclusion is irresistible, that the profession of the law, like the clerical profession and that of medicine, is an avocation open to every citizen of the United States. And while the legislature may prescribe qualifications for entering upon this pursuit, they cannot, under the guise of fixing qualifications, exclude a class of citizens from admission to the bar. The legislature may say at what age candidates shall be admitted; may elevate or depress the standard of learning required. But a qualification, to which a whole class of citizens never can attain, is not a regulation of admission to the bar, but is, as to such citizens, a prohibition. For instance, a State legislature could not, in enumerating the qualifications, require the candidate to be a white citizen. This would be the exclusion of all colored citizens, without regard to age, character, or learning. Yet no sound mind can draw a distinction between such an act and a custom, usage, or law of a State, which denies this privilege to all female citizens, without regard to age, character, or learning. If the legislature may, under pretence of fixing qualifications, declare that no

---

[*] Ex parte Heyfron, 7 Howard's Mississippi, 127; Fletcher v. Daingerfield, 20 California, 430.

[†] Ex parte Cooper, 22 New York, 67; Strother v. Missouri, 1 Missouri, 605; Ex parte Secomb, 19 Howard, 9; Ex parte Garland, 4 Wallace, 378.

female citizen shall be permitted to practice law, it may as well declare that no colored citizen shall practice law; for the only provision in the Constitution of the United States which secures to colored male citizens the privilege of admission to the bar, or the pursuit of the other ordinary avocations of life, is the provision that "no State shall make or enforce any law which shall abridge the privileges or immunities of a citizen." And if this provision does protect the colored citizen, then it protects every citizen, black or white, male or female.

Now, Mrs. Bradwell is a citizen of the United States, and of the State of Illinois, residing therein; she has been judicially ascertained to be of full age, and to possess the requisite character and learning.

Still admission to the bar was denied her, not upon the ground that she was not a citizen; not for want of age or qualifications; not because the profession of the law is not one of those avocations which are open to every American citizen as matter of right, upon complying with the reasonable regulations prescribed by the legislature; but first upon the ground that inconvenience would result from permitting her to enjoy her legal rights in this, to wit, that her clients might have difficulty in enforcing the contracts they might make with her, as their attorney, because of her being a married woman; and, finally, on the ground of her sex, merely.

Now, the argument _ab inconvenienti_, which might have been urged with whatever force belongs to it, against _adopting_ the fourteenth amendment in the full scope of its language, is futile to resist its full and proper operation, now that it has been adopted. But that objection is really without force; for Mrs. Bradwell, admitted to the bar, becomes an officer of the court, subject to its summary jurisdiction. Any malpractice or unprofessional conduct towards her client would be punishable by fine, imprisonment, or expulsion from the bar, or by all three. Her clients would, therefore, not be compelled to resort to actions at law against her. The objection arising from her coverture was in fact

abandoned, in its more full consideration of the case, by the court itself; and the refusal put upon the fact that the statute of Illinois, interpreted by the light of early days, could not have contemplated the admission of any woman, though unmarried, to the bar.   But whatever the statute of Illinois meant, I maintain that the fourteenth amendment opens to every citizen of the United States, male or female, black or white, married or single, the honorable professions as well as the servile employments of life;· and that no citizen can be excluded from any one of them.   Intelligence, integrity, and honor are the only qualifications that can be prescribed as conditions precedent to an entry upon any honorable pursuit or profitable avocation, and all the privileges and immunities which I vindicate· to a colored citizen, I vindicate to our mothers, our sisters, and our daughters.   The inequalities of sex will undoubtedly have their influence, and be considered by every client desiring to employ counsel.

There may be cases in which a client's rights can only be rescued by an exercise of the rough qualities possessed by men.   There are many causes in which the silver voice of woman would accomplish more than the severity and sternness of man could achieve.   Of a bar composed of men and women of equal integrity and learning, women might be more or less frequently retained, as the taste or judgment of clients might dictate.   But the broad shield of the Constitution is over them all, and protects each in that measure of success which his or her individual merits may secure.

*No opposing counsel.*

Mr. Justice MILLER delivered the opinion of the court.

The record in this case is not very perfect, but it may be fairly taken that the plaintiff asserted her right to a license on the grounds, among others, that she was a citizen of the United States, and that having been a citizen of Vermont at one time, she was, in the State of Illinois, entitled to any right granted to citizens of the latter State.

The court having overruled these claims of right founded on the clauses of the Federal Constitution before referred

to, those propositions may be considered as properly before this court.

As regards the provision of the Constitution that citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States, the plaintiff in her affidavit has stated very clearly a case to which it is inapplicable.

The protection designed by that clause, as has been repeatedly held, has no application to a citizen of the State whose laws are complained of. If the plaintiff was a citizen of the State of Illinois, that provision of the Constitution gave her no protection against its courts or its legislation.

The plaintiff seems to have seen this difficulty, and attempts to avoid it by stating that she was born in Vermont.

While she remained in Vermont that circumstance made her a citizen of that State. But she states, at the same time, that she is a citizen of the United States, and that she is now, and has been for many years past, a resident of Chicago, in the State of Illinois.

The fourteenth amendment declares that citizens of the United States are citizens of the State within which they reside; therefore the plaintiff was, at the time of making her application, a citizen of the United States and a citizen of the State of Illinois.

We do not here mean to say that there may not be a temporary residence in one State, with intent to return to another, which will not create citizenship in the former. But the plaintiff states nothing to take her case out of the definition of citizenship of a State as defined by the first section of the fourteenth amendment.

In regard to that amendment counsel for the plaintiff in this court truly says that there are certain privileges and immunities which belong to a citizen of the United States as such; otherwise it would be nonsense for the fourteenth amendment to prohibit a State from abridging them, and he proceeds to argue that admission to the bar of a State of a person who possesses the requisite learning and character is one of those which a State may not deny.

In this latter proposition we are not able to concur with counsel. We agree with him that there are privileges and immunities belonging to citizens of the United States, in that relation and character, and that it is these and these alone which a State is forbidden to abridge. But the right to admission to practice in the courts of a State is not one of them. This right in no sense depends on citizenship of the United States. It has not, as far as we know, ever been made in any State, or in any case, to depend on citizenship at all. Certainly many prominent and distinguished lawyers have been admitted to practice, both in the State and Federal courts, who were not citizens of the United States or of any State. But, on whatever basis this right may be placed, so far as it can have any relation to citizenship at all, it would seem that, as to the courts of a State, it would relate to citizenship of the State, and as to Federal courts, it would relate to citizenship of the United States.

The opinion just delivered in the *Slaughter-House Cases*[*] renders elaborate argument in the present case unnecessary; for, unless we are wholly and radically mistaken in the principles on which those cases are decided, the right to control and regulate the granting of license to practice law in the courts of a State is one of those powers which are not transferred for its protection to the Federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license.

It is unnecessary to repeat the argument on which the judgment in those cases is founded. It is sufficient to say they are conclusive of the present case.

JUDGMENT AFFIRMED.

Mr. Justice BRADLEY:

I concur in the judgment of the court in this case, by which the judgment of the Supreme Court of Illinois is affirmed, but not for the reasons specified in the opinion just read.

---

[*] *Supra,* p. 36.

The claim of the plaintiff, who is a married woman, to be admitted to practice as an attorney and counsellor-at-law, is based upon the supposed right of every person, man or woman, to engage in any lawful employment for a livelihood. The Supreme Court of Illinois denied the application on the ground that, by the common law, which is the basis of the laws of Illinois, only men were admitted to the bar, and the legislature had not made any change in this respect, but had simply provided that no person should be admitted to practice as attorney or counsellor without having previously obtained a license for that purpose from two justices of the Supreme Court, and that no person should receive a license without first obtaining a certificate from the court of some county of his good moral character. In other respects it was left to the discretion of the court to establish the rules by which admission to the profession should be determined. The court, however, regarded itself as bound by at least two limitations. One was that it should establish such terms of admission as would promote the proper administration of justice, and the other that it should not admit any persons, or class of persons, not intended by the legislature to be admitted, even though not expressly excluded by statute. In view of this latter limitation the court felt compelled to deny the application of females to be admitted as members of the bar. Being contrary to the rules of the common law and the usages of Westminster Hall from time immemorial, it could not be supposed that the legislature had intended to adopt any different rule.

The claim that, under the fourteenth amendment of the Constitution, which declares that no State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, the statute law of Illinois, or the common law prevailing in that State, can no longer be set up as a barrier against the right of females to pursue any lawful employment for a livelihood (the practice of law included), assumes that it is one of the privileges and immunities of women as citizens to engage in any and every profession, occupation, or employment in civil life.

It certainly cannot be affirmed, as an historical fact, that this has ever been established as one of the fundamental privileges and immunities of the sex.    On the contrary, the civil law, as well as nature herself, has always recognized a wide difference in the respective spheres and destinies of man and woman.    Man is, or should be, woman's protector and defender.    The natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life.    The constitution of the family organization, which is founded in the divine ordinance, as well as in the nature of things, indicates the domestic sphere as that which properly belongs to the domain and functions of womanhood.    The harmony, not to say identity, of interests and views which belong, or should belong, to the family institution is repugnant to the idea of a woman adopting a distinct and independent career from that of her husband.    So firmly fixed was this sentiment in the founders of the common law that it became a maxim of that system of jurisprudence that a woman had no legal existence separate from her husband, who was regarded as her head and representative in the social state; and, notwithstanding some recent modifications of this civil status, many of the special rules of law flowing from and dependent upon this cardinal principle still exist in full force in most States.    One of these is, that a married woman is incapable, without her husband's consent, of making contracts which shall be binding on her or him.    This very incapacity was one circumstance which the Supreme Court of Illinois deemed important in rendering a married woman incompetent fully to perform the duties and trusts that belong to the office of an attorney and counsellor.

It is true that many women are unmarried and not affected by any of the duties, complications, and incapacities arising out of the married state, but these are exceptions to the general rule.    The paramount destiny and mission of woman are to fulfil the noble and benign offices of wife and mother.    This is the law of the Creator.    And the rules of civil society

must be adapted to the general constitution of things, and cannot be based upon exceptional cases.

The humane movements of modern society, which have for their object the multiplication of avenues for woman's advancement, and of occupations adapted to her condition and sex, have my heartiest concurrence. But I am not prepared to say that it is one of her fundamental rights and privileges to be admitted into every office and position, including those which require highly special qualifications and demanding special responsibilities. In the nature of things it is not every citizen of every age, sex, and condition that is qualified for every calling and position. It is the prerogative of the legislator to prescribe regulations founded on nature, reason, and experience for the due admission of qualified persons to professions and callings demanding special skill and confidence. This fairly belongs to the police power of the State; and, in my opinion, in view of the peculiar characteristics, destiny, and mission of woman, it is within the province of the legislature to ordain what offices, positions, and callings shall be filled and discharged by men, and shall receive the benefit of those energies and responsibilities, and that decision and firmness which are presumed to predominate in the sterner sex.

For these reasons I think that the laws of Illinois now complained of are not obnoxious to the charge of abridging any of the privileges and immunities of citizens of the United States.

Mr. Justice SWAYNE and Mr. Justice FIELD concurred in the foregoing opinion of Mr. Justice BRADLEY.

The CHIEF JUSTICE dissented from the judgment of the court, and from all the opinions.