## THE STATE OF OHIO v. BYRON E. OTTMAN.

The act of the legislature passed February 27th, 1896, (92 Ohio Laws 44, )being an act to regulate the practice of medicine,'' does not transgress Sec. 10 of Art. 1, or Sec. 1 cf Art. 4, of the United States Constitution, or Sec. 1 of the Fourteenth Amendment to the United States Constitution, or Sec. 1 of Art. 4, or Sec. 16 of Art. 2 of the Ohio Constitution. It is in entire harmony with all these constitutional provisions.

(Decided April 26, 1897.)

PUGH, J.

The defendant made an affidavit for the purpose of obtaining a certificate to practice medicine, pursuant to the act of the legislature passed February 27, 1896, (92 Ohio Laws, 44-49.)

He was indicted for perjury, alleged to have been committed in that affidavit.

To this indictment he has filed a motion to quash and a demurrer.

The constitutionality of the statute is challenged, as well as the propriety and justice of its provisions.

The decision of the first question is the only one that comes within the province of a court.

Under the civil law no barriers were drawn around either professions of law or medicine. Any one who pleased might practice them without any previous qualification, subject always for injuries inflicted upon others.

The common law, having an habitual regard for the widest freedom of action, and borrowing from the civil law, always favored the right of any man to practice in any profession or business in which he was competent. It was a right inherent in every man to practice the art of medicine.

But in modern times the tendency of legislation is to prescribe qualifications for the practice of the profession of law and medicine. Its competency can not be successfully impugned. Learning and good moral character may be required as a condition to the exercise of the right to practice them. A law enjoining reasonable requirements as to learning and character, is simply an exercise of the police power. This power may be exercised in barring from admission those who apply for the right to practice the profession of medicine, and also in excluding those who have been practicing it. Such legislation is justified by the safety of the lives, health and comfort of the people, which is the supreme law. State v. Hinman, 18 Atl. 194.

In no case is the practice of medicine a property right. State v. State Med. Ex. Board, 32 Minn., 324.

Nor is it a vested right. Dent v. West Virginia, 9 Sup. Ct. Rep. 231.

But it is a valuable right; and no one can, arbitrarily and without reason, be deprived of it.

1. It is asserted that this statute violates Sec. 10 of Art. 1 of the U. S. constitution, which prohibits the passage of ex post facto laws or bills of attainder.

The brief of defendant's counsel did not particularize the part, or parts, of the statute which insult that section of the organic law, but it is assumed that he means that provision which authorizes the Medical Board to refuse to grant, or to revoke, a certificate to practice ''to any person guilty of felony or gross immorality.'' The theory is that that is a deprivation of a civil right for past conduct.

The statute does not say that the Board may deprive a person, who has practiced, one who is called by the law a ''legal practitioner,'' of his right to continue it, because he committed a felony before the passage of the act.

The power of revocation applies only to certificates issued by the Board.

I do not mean by this to evade the decision of any question debated by counsel.

The objection, now considered, would only be plausible where a certificate had been refused, or revoked, to one who had been what the statute styles a ''legal practitioner,'' the refusal or revocation being based upon the ground that he had committed a felony, or had been guilty of gross immorality, at some time before the passage of the statute.

But even if the statute means that the board could refuse to grant, or could revoke, a certificate in such an extreme case, why should the statute be deemed unconstitutional?

A right to practice medicine not being either a vested or a property right, it is not perceivable what constitutional restraint or restriction is violated by the statute. Why has not the legislature as much power to purify the profession of felonious and immoral practioners as it has to exclude such persons from entering the profession in the first instance? Can a felony or immorality confer a vested or a property right?

2. It is insisted that the statute violates sec. 2 of art. 4, of the United States constitution which ordains that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states.

The specific objection is that it discriminates against one class of non-resident physicians and surgeons, and in favor of another class.

The statute does not prohibit non-resident practitioners from practicing here, at least not directly, as counsel for defendant affirms. The constitutional incompetency of such legislation is not decided, but is assumed. Still, upon this assumption, the legislature has the power to require of non-resident practioners the same qualifications that are exacted of residents.

Whenever a state grants rights to its own

citizens, or limits or qualifies their rights, or imposes restrictions upon the exercise of those rights, citizens of other states within its jurisdiction, shall enjoy the same rights, and their rights shall be similarly limited, qualified and restricted.

That is the meaning of the constitutional provision which, it is asserted, is violated by this statute.

But I repeat there is no such discrimination contained in the statute in question, as is forbidden by that provision, even if it has any application to this case, as I have assumed, but not decided.

The only difficulty there is in reconciling this statute with the federal organic law, as it is assumed to be, arises from the fact that there is no place provided for the registration of the certificate granted to the non-resident. The statute peremptorily declares that the "person receiving the certificate shall before entering upon the practice, leave his certificate with the probate judge of the county in which he resides for record." But where can the non-resident leave his certificate for record? If there is any, this is the only answer.

One may have a domicil in one, and his residence in another, state. While he can have but one domicil, he may have one or more residences. He cannot be without a domicil; that is a legal solecism.

One may have both a personal and a legal residence.

To constitute residence, courts have iterated and reiterated, one of the ingredients is, "an intent to remain permanently, at least for a time, for business, or other purposes." 19 Wend. 11.

The correct interpretation of this provision, in our statute, is that it means that the certificate must be recorded in the county where the doctor abides or dwells "for some continuance of time for business purposes." That makes it operative, and places the non-resident upon an equality with the resident doctor

The other objection, under this same head, is that non-resident physicians and surgeons, "residing on the border of a neighboring state, whose practice extends into the limits of this state" shall not be required to have the certificate demanded of residents. That gives him a privilege a resident does not have, it is said. If he opens an office or appoints a place to meet patients or receive calls, then he must have the certificate.

One answer to this objection is that the statute does not impose a burden—the burden of obtaining a certificate—on certain persons and exempt others of the same class under similar circumstances and conditions. The two kinds of physicians and surgeons—residents, and non-residents living on the border of a neighboring state—are not environed by the same circumstances and conditions, although they belong to the same profession.

It is, perhaps, a favor to the non-residents who live on the border of the state. But the same kind of a provision in a West Virginia law was upheld in Dent v. West Virginia, supra, not being considered arbitrary in its character.    (Page 234.)

An answer to the entire contention, that the statute violates sec. 2 of art. 4 of the United States consitution—an answer which is conclusive—is, that the defendant is not entitled to make this objection.

A citizen of the state whose laws are complained of cannot invoke the protection of this clause of the constitution. That provision was never designed to give such a citizen a shield against the courts or legislation of his own state.

The defendant being a citizen of this state, he cannot find a place of refuge, against the state's prosecution, under this constitutional provision.    Bradwell v. The State, 16 Wall., 130.

3. Again, it is claimed that the statute violates sec. 1 of art. 4 of the state constitution, because under the provision for an appeal from the decision of the board, either refusing or revoking a certificate, on the ground that the applicant or holder has been guilty of a felony or of gross immorality, judicial power is conferred upon the Governor and Attorney General.

The answer to this objection is a very old and sound one.

Judicial power, in the sense of the constitutional provision, means the power to hear and determine rights of property and controversies between parties. No such power is conferred upon the Governor and Attorney General. There is not even amiable sophistry in this contention.    (44 Ohio. St. 98.)

4. Again, it is asserted that the statute infringes upon the first section of the fourteenth amendment to the United States constitution.

That amendment emphasized certain pre-existing guarantees of civil liberty; the citizenship of the United States was pronounced to be the paramount political status; a larger scope was given to the meaning of the term than had been before recognized, either politically or judicially; and the states were commanded not to make or enforce any law abridging the enjoyment of the privileges and immunities of citizens of the United States. But the privileges and immunities whose abridgement was forbidden are only those which belong to citizens of the United States in virtue of that relation and character. They sprout form, they grow out of, they bud and blossom, and they ripen upon, that citizenship. But the right to practice medicine does not, in any sense, emanate from, or depend upon, citizenship in the United States.

Nowhere has it been made to depend upon that citizenship.

The exercise by a state of the power to determine, legislatively, who shall be allowed to practice medicine cannot be hampered, controlled or governed by citizenship of the

United States in the person who endeavors to obtain permission to practice medicine. Bradwell v. The State, 16 Wall., 130.

For this reason the statute does not infringe upon the provisions of the fourteenth amendment.

5. The claim that the statute does not harmonize with Sec. 16 of Art. 2 of the United States constitution, which forbids a bill to contain more than one subject, has no merit.

The motion to quash and the demurrer to the indictment are overruled.

J. K. Richards and J. H. Dyer, Prosecuting Attorneys, for the State.

Powell & Minahan, for the Defendant.