## WADLEIGH v. NEWHALL.

(Circuit Court, N. D. California. March 13, 1905.)

No. 13,640.

1. CONSTITUTIONAL LAW—CIVIL RIGHTS—MATTERS WITHIN PROTECTION OF FOURTEENTH AMENDMENT.

The rights, privileges, and immunities which the fourteenth constitutional amendment and Rev. St. § 1979 [U. S. Comp. St. 1901, p. 1262], for its enforcement, were designed to protect, are such as belong to citizens of the United States as such, and not as citizens of a state.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 625.]

2. PARENT AND CHILD—RIGHT TO CUSTODY OF INFANT.

Parents have no right to the custody of their infant children, except subject to the paramount right of the state, to be exercised whenever deemed for the best interest of the children.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parent and Child, § 4.]

3. CIVIL RIGHTS UNDER FEDERAL CONSTITUTION—CUSTODY OF CHILDREN.

Code Civ. Proc. Cal. § 1747, which authorizes proceedings for the appointment of guardians for the persons and estates of minor children

having no guardians by will or deed, is a lawful exercise of the state's power; and proceedings based thereon, by which parents are deprived of the custody of their children, do not give them a right of action against the persons instituting the proceedings, under Rev. St. § 1979 [U. S. Comp. St. 1901, p. 1262], for depriving them of rights, privileges, or immunities secured to them by the Constitution or laws of the United States.

4. PLEADING—STRIKING COMPLAINT FROM FILES—SCANDALOUS MATTER.

A complaint in an action to recover damages for depriving plaintiff of rights in violation of the federal Constitution considered, and *held* to contain allegations and charges against not only the defendant, but also other persons, not parties, which rendered it scandalous to such an extent that it would be struck from the files; it having been previously determined that it did not state a cause of action.

At Law. On demurrer to complaint and motion to strike the same from the files.

Horace W. Philbrook, for plaintiff.

Martin Stevens and R. T. Devlin, for defendant.

MORROW, Circuit Judge. This is an action to recover from the defendant the sum of $50,000 damages, alleged to have been sustained by the plaintiff by reason of the defendant maliciously subjecting the plaintiff, and causing him to be subjected, to the deprivation of rights, privileges, and immunities secured to him by each, respectively, of the following provisions of the fourteenth amendment to the Constitution of the United States, to wit:

"(1) Nor shall any state deprive any person of life, liberty, or property without due process of law; (2) nor deny to any person within its jurisdiction the equal protection of the laws."

It is alleged that the plaintiff was deprived of these rights, privileges, and immunities of the Constitution under color of section 1747 of the Code of Civil Procedure of the state of California. This section provides that the superior court, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either of them, of minors who have no guardian legally appointed by will or deed.

The plaintiff alleges in his complaint that he is a citizen of the state of Washington, and now residing in said state, and that the defendant is a citizen of the state of California, and an inhabitant of the Northern judicial district thereof. The complaint was filed July 29, 1904. The plaintiff alleges that prior to the 29th day of January, 1903, there had been born to the plaintiff and his wife, and of their marriage, five children, as follows: (1) May, born on the 18th day of September, 1887, and of the age of 15 years on the 29th day of January, 1903. (2) John, born on the 18th day of September, 1889, and 13 years of age. (3) Sarah (who until she was about 5 years of age was named Florence), born on the 26th day of November, 1891, and 11 years of age. (4) Solomon, born on the 16th day of September, 1894, and 8 years of age. (5) Helen, born on the 25th day of January, 1901, and 2 years of age. It is alleged that for more than a year prior to January 29, 1903, the plaintiff and his wife and these children resided together in California, except that John had been in charge of the Boys' and Girls' Aid Society in San Francisco since about December 24, 1902; that defendant, during the month of January, 1903, and during the year next prior thereto,

was the president and executive head of the corporation known as the California Society for the Prevention of Cruelty to Children, a corporation organized under an act of the Legislature entitled "An act for the incorporation of societies for the prevention of cruelty to children," approved April 3, 1876 (Civ. Code Cal. § 607); that during the month of January, 1903, M. J. White was the secretary and executive agent of said corporation, and as such subject to the defendant's domination and control; that on or about the 29th day of January, 1903, the defendant and the said M. J. White and one Herbert J. Lewis, who was then and ever since has been the superintendent of the Boys' and Girls' Aid Society—

"Contriving and maliciously intending, and with the purpose and design, to gratify the crafty and evil inclinations and to magnify the importance of the defendant and of others of his said confederates, and to wrong, injure, and oppress the plaintiff and his wife and their children, and to abduct the said children from the plaintiff and from his wife, and maliciously, forcibly, and fraudulently to take away the said children, with the intent to detain and conceal them from the plaintiff and from his wife, and to separate the said children from one another, and to break up and destroy the plaintiff's family, and to hold the said children falsely imprisoned, and to estrange the affections and to poison the minds of the said children against the plaintiff and his wife, and to deprive the plaintiff of the services and of the society of each, respectively, of his said children, and to brand falsely the said children John Wadleigh and Solomon Wadleigh as criminals, and to corrupt and destroy the morals of the said child May Wadleigh, and to corrupt and destroy the morals of the said child Sarah Wadleigh, and to seduce and pervert her affections to the defendant and for his wrongful gratifications, and to give out to the public and induce the public to believe that each, respectively, of the said children was not in truth the offspring of the plaintiff or of his wife, and fraudulently to induce the said children to believe that they, respectively, were not the offspring of the plaintiff or of his wife, and to obtain and hold for effectuating their said intended wrongdoing a false judgment of the superior court of the said city and county of San Francisco to be made under color of the said statute contained in section 1747 of the Code of Civil Procedure of California, and by means of causing the said guaranties of the Constitution of the United States to be violated against the plaintiff and his wife and their children, and purporting to appoint the said M. J. White guardian of the persons of the said children, and to use the name and the pretended exercise of the corporate powers of the said the California Society for the Prevention of Cruelty to Children as a means and shield by and under which to effect their said intended wrongdoing, entered into and together formed a combination and conspiracy, with the common design to effect by their concerted action their said intention and purposes, and thereupon in furtherance of their said common design proceeded" as stated in the complaint.

The complaint then alleges the filing of an unverified petition in the superior court of the state of California in and for the city and county of San Francisco, by the defendant and by his confederates, for the appointment of M. J. White as the guardian of the plaintiff's children. It is alleged that the petition was filed without probable cause. A copy of the petition is annexed to the complaint. The material allegations of this petition are denied, and declared to be as follows: It is alleged that upon this petition the court, without notice and without hearing or opportunity for hearing, without proof, or evidence, or probable cause, and entirely upon the said false and unverified petition, made an order purporting to authorize the said M. J. White instantly to seize and arrest and take said children away from the plaintiff and from his

wife, and to hold and keep the said children in person. Thereupon the defendant and his confederates, with the assistance of two police officers, forcibly, maliciously, and feloniously seized and arrested four of the children, May, Sarah, Solomon, and Helen, and took them from the plaintiff and from his wife, just as the plaintiff and his wife, together with the children, were about to depart from San Francisco for Seattle, in the state of Washington. It is alleged that the child John was also to have gone with the other members of the family, but was detained by the defendant and his confederates at the home of the Boys' and Girls' Aid Society, and thereupon and thereafter the defendant and his confederates held and kept the said children falsely imprisoned at various places as in the complaint set forth; that Sarah, on the 3d of February, 1903, and May, with the youngest child, Helen, on the 5th day of February, 1903, escaped from the defendant and his confederates and fled to the plaintiff and his wife; that John and Solomon were held by the defendant and his confederates until they were produced in the superior court on February 7, 1903; that after the plaintiff and his wife had made and entered their appearance in the superior court on February 7, 1903, there was a pretended trial and hearing of the said suit or proceeding, and solely upon said petition, which had been filed by the defendant and his confederates in the said superior court on the 29th day of January, 1903, as before stated; that this trial and hearing was held in department 9 of said superior court, in the courtroom thereof in the City Hall of the city and county of San Francisco; that the said pretended trial and hearing was the only trial and hearing of the said proceeding that was had at any time in or before the said superior court, and that neither at the said pretended trial or hearing, nor at any other time, was any evidence given in support of the allegations concerning the plaintiff or his wife, or concerning any of their children, stated in the said petition as grounds for the appointment of guardian for the person of any of said children; that four of the said children, namely, May, John, Sarah, and Solomon, were in the said courtroom during the said pretended trial or hearing; that the said children John and Solomon were brought to the said courtroom and to the said pretended trial or hearing by the defendant and his confederates and in their custody; that May and Sarah were brought there by plaintiff and his wife; that Helen was not present in said courtroom, but was at the lodgings of the plaintiff and his wife in the said city and county, sick with a severe cold which she had contracted while she was in the custody of the defendant and his confederates.

The proceedings in the court upon the hearing are described in the complaint in detail. These proceedings resulted in the declaration of the judge presiding at the hearing that he would appoint, and the subsequent appointment of, M. J. White as guardian of the persons of plaintiff's children, and thereupon it is alleged that the defendant and his confederates seized and arrested the four children, May, John, Sarah, and Solomon, and took and abducted them from the plaintiff and his wife, and held and kept them imprisoned at various places until in the month of January, 1904, when plaintiff's wife petitioned the Supreme Court of the state for the discharge of the four children from the custody of the defendant and his confederates, for their restoration to

plaintiff, and for leave to take the children without delay to the plaintiff in the city of Seattle; that a writ of habeas corpus was granted, and on the 12th day of January, 1904, the said children May and Sarah were discharged from the custody of the defendant and his confederates, and restored to the custody of the plaintiff's wife. No order was made with respect to the children John and Solomon, as they were not then in the custody of the guardian, M. J. White; but subsequently, and on January 20, 1904, they were also surrendered into the possession of plaintiff's wife, and thereupon she, with the four children, May, Sarah, John, and Solomon, departed for Seattle, where they have since resided.

The complaint does not state the grounds of the action of the Supreme Court in discharging the children May and Sarah from the custody of the guardian appointed by the superior court, and no opinion in the case appears to have been filed or published. What defects, if any there were, in the proceedings, have not been brought to the attention of the court, unless the following allegation of the complaint may be construed as such a statement:

"No citation or process or notice in the said suit or special proceeding was at any time served upon the plaintiff herein, or upon his wife, or upon any of the plaintiff's said children; that no citation or copy of a citation, or process or copy of process, in the said suit or proceeding, was at any time delivered or shown to the plaintiff herein, or to his wife, or to any of their children at any time in the year 1903."

But this allegation is qualified by the further allegation that the hearing of the petition for guardianship was after the plaintiff and his wife had "entered their appearance in said superior court in the said suit or special proceeding," and the allegation that they were present at each hearing. It would seem that a voluntary appearance in the proceeding would amount to a waiver of notice in a collateral attack upon the proceeding; but, however that may be, the regularity of the proceedings in the state court is not a matter for present consideration.

In the preceding references to the allegations of the complaint, many matters charged therein have not been noticed, for the reason that they are not necessary to a general understanding of the cause of action, which it is the present purpose to point out and consider. The ultimate claim of the plaintiff is that the defendant and his confederates, in furtherance of their common design, and by means of the acts done by them in furtherance thereof, and under color of section 1747 of the Code of Civil Procedure of California, have maliciously subjected plaintiff, and have maliciously caused him to be subjected, to the deprivation of rights, privileges, and immunities secured to him by each, respectively, of the provisions and guaranties of the Constitution of the United States, referring to the provisions of the fourteenth amendment relating to due process of law and the equal protection of the laws. From this statement it very clearly appears that the plaintiff's complaint against the defendant is based upon proceedings in the state court resulting in the judicial appointment of a guardian for his minor children and the taking of the children into custody under such guardianship. These acts, it is said, were done under color of law, but were not due process of law, and deprived the plaintiff of the equal protection of the laws.

To this complaint the defendant has interposed a demurrer upon a

number of grounds, but it will only be necessary to notice the objection that the complaint does not state facts sufficient to constitute a cause of action. The defendant has also interposed motions (1) to strike from the files of the court the entire complaint and suppress the same, and (2) to strike out certain portions thereof.

In support of the complaint, against the demurrer and the motions interposed by the defendant, the plaintiff asserts that the case is a civil-law action, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the Constitution and/or laws of the United States, and as such is within the jurisdiction of a Circuit Court of the United States; that the law under which the suit arises is section 1979 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1262]. That section provides as follows: ·

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The plaintiff alleges in his complaint, and has urged in support of it, that section 1747 of the Code of Civil Procedure of California, providing for the appointment of guardians by the superior court for the persons of minors residing in the state who have no guardians legally appointed by will or deed, is invalid and void, for the reason that it deprives persons of life, liberty, and property without due process of law, and denies to persons within its jurisdiction the equal protection of the laws, and that the defendant, proceeding under color of this invalid and void statute in securing the appointment of a guardian for the four minor children of the plaintiff, brought himself within the provisions of section 1979 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1262], and is liable thereunder. This contention of the plaintiff as to his cause of action limits the issues involved, and enables the court to determine without much difficulty the real questions to be considered, notwithstanding the voluminous recitals of irrelevant and immaterial matter.

The rights, privileges, and immunities which the fourteenth amendment to the Constitution of the United States guaranties, and which this section of the Revised Statutes was designed to protect, were the rights, privileges, and immunities which belong to citizens of the United States as such, but not the rights, privileges, and immunities which belong to the citizens of the state. There are privileges and immunities belonging to citizens of the United States in that relation and character, and it is these, and these alone, that a state is forbidden to abridge. Bradwell v. The State, 16 Wall. 130–138, 139, 21 L. Ed. 442.

This brings me to the consideration of the question whether the state had authority to confer upon the superior court the power to appoint a guardian for the plaintiff's minor children. In United States v. Green, Fed. Cas. No. 15,256, the father of an infant petitioned the court for a writ of habeas corpus to bring up the body of an infant

daughter alleged to be wrongfully detained in the custody of the defendant, who was her grandfather. The court (Mr. Justice Story), in discussing the right of the father to have the custody of his daughter, said:

"As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant; the law presuming it to be for his interest to be under the nurture and care of his natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and, if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint, and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody. The case of Rex v. De Mandeville, 5 East, 221, is not inconsistent with this doctrine, but, on the other hand, supposes its existence. The court there thought it for the interest of the child to give the custody to the father. The judges thought there was no reason to suppose the father would abuse his right, or injure the child. Lord Eldon, in De Manneville v. De Manneville, 10 Ves. 52, avowed his approbation of the doctrine, and said he had, exercising the authority of the king as parens patriæ, removed children from the custody of their father, when he thought such custody unsuitable. The case of In re Waldron, 13 Johns. 419, is directly in point; and to the same effect is Rex v. Smith, 2 Strange, 982."

The law upon this subject in this country is stated in section 10 of Hocheimer on Custody of Infants as follows:

"The general result of the American cases may be characterized as an utter repudiation of the notion that there can be such a thing as a proprietary right or interest in or to the custody of an infant, or that a claim to such custody can be asserted merely as a claim, and the general drift of opinion is in the direction of treating the idea of trust as the controlling principle in all controversies in relation to such custody."

In 2 Story's Eq. Jur. § 1341, that author says:

"The jurisdiction of the court of chancery extends to the care of the person of the infant, so far as necessary for his protection and education, and, as to the care of the property of the infant, for its due management and preservation, and proper application for his maintenance. It is upon the former ground, principally—that is to say, for the due protection and education of the infant—that the court interferes with the ordinary rights of parents, as guardians by nature or by nurture, in regard to the custody and care of their children. For although, in general, parents are intrusted with the custody of the persons and the education of their children, yet this is done upon the natural presumption that the children will be properly taken care of and will be brought up with a due education in literature, and morals, and religion, and that they will be treated with kindness and affection. But, whenever this presumption is removed—whenever (for example) it is found that a father is guilty of gross ill-treatment or cruelty towards his infant children; or that he is in constant habits of drunkenness and blasphemy, or low and gross debauchery; or that he professes atheistical or irreligious principles; or that his domestic associations are such as tend to the corruption and contamination of his children; or that he otherwise acts in a manner injurious to the morals or interests of his children—in every such case the court of chancery will interfere, and deprive him of the custody of his children, and appoint a suitable person to act as guardian, and to take care of them and to superintend their education."

In Mercein v. People, 25 Wend. (N. Y.) 64, 35 Am. Dec. 653, there was a controversy between the father and mother with respect to the custody of a minor child. The father and mother lived apart under a voluntary separation. The child had been left in the custody of its mother. Subsequently the father sought to obtain the possession of the child by a writ of habeas corpus. In the Court of Errors, Senator Paige, discussing the rights of the respective parents to the custody of minor children, said:

"By the law of nature the father has no paramount right to the custody of his child. By that law the wife and child are equal to the husband and father, but inferior and subject to their sovereign. The head of a family, in his character of husband and father, has no authority over his wife and children; but in his character of sovereign he has. On the establishment of civil societies, the power of the chief of a family as sovereign passes to the chief or government of the nation; and, the chief or magistrate of the nation not possessing the requisite knowledge necessary to a judicious discharge of the duties of guardianship and education of children, such portion of the sovereign power as relates to the discharge of these duties is transferred to the parents, subject to such restrictions and limitations as the sovereign power of the nation think proper to prescribe. There is no parental authority independent of the supreme power of the state. But the former is derived altogether from the latter. In the civil state there is no inequality between the father and mother. Ordinarily a child, during infancy, is entirely under the discipline of its mother, and very frequently wives discharge the duty of education of their children better than the husbands. De Felice, Lectures on Natural Rights, lecture 30. It seems, then, that by the law of nature the father has no paramount inalienable right to the custody of his child. And the civil or municipal law, in setting bounds to his parental authority, and in entirely or partially depriving him of it in cases where the interests and and welfare of his child require it, does not come in conflict with or subvert any of the principles of the natural law. The moment a child is born, it owes allegiance to the government of the country of its birth, and is entitled to the protection of that government. And such government is obligated by its duty of protection to consult the welfare, comfort, and interests of such child in regulating its custody during the period of its minority."

The provisions of section 1747 of the Code of Civil Procedure of California are a part of the procedure provided for the execution of this supreme power of the state, and there is nothing in the argument of counsel for plaintiff to show that this law is unconstitutional. It must, therefore, be treated as valid, and within the legislative authority of the state. The conclusion follows that no right of action under section 1979 of the Revised Statutes [U. S. Comp. St. 1901, p. 1262] or the fourteenth amendment to the Constitution can be predicated upon the enforcement of this statute in a case that comes within its provisions. The demurrer to the complaint is therefore sustained.

There remains the further question presented by the motion to strike this complaint from the files. This motion is based upon the grounds that the complaint is scurrilous, scandalous, and devised to publish a libel under color of law, and that the scurrilous, scandalous, impertinent, and irrelevant matter is so interwoven with the relevant matter that it cannot be separated therefrom. Having determined that the complaint does not state facts sufficient to constitute a cause of action, we are concerned only with the character of the irrelevant matter contained in this complaint. Among other things, it contains recitals of articles published in the newspapers concerning the guardianship pro-

ceedings in this case in the superior court, and charges and innuendoes concerning the action of the court and others. It is alleged that during the month of January, 1903, and during 10 years or thereabouts next prior thereto, one George A. Newhall, the defendant's brother, was, and ever since has been, and now is the intimate personal friend and business associate of the defendant; that from the 30th day of December, 1899, or thereabouts, until the 1st day of October, 1903, or thereabouts, the said George A. Newhall was a duly appointed, qualified, and acting police commissioner, and member of the board of police commissioners of the said city and county of San Francisco; that in the evening of the 29th day of January, 1903, while the plaintiff and his wife and their four children, May, Sarah, Solomon, and Helen, were at the Ferry Depot Building in San Francisco, waiting to depart thence upon their intended journey of removal to Seattle, the defendant and his confederates, with the assistance of two police officers of the city and county of San Francisco, whose presence there and assistance they had wrongfully procured by means of the defendant's influence and his connection with the police department of the said city and county hereinbefore stated, and all of them armed with deadly weapons, waylaid and stole upon the plaintiff and his wife and their said four children, and then and there, with force and violence, maliciously and feloniously assaulted them all, and then and there, without any warrant, or any regular process, or any authority therefor, forcibly, maliciously, and feloniously seized and arrested the said four children. This is the only reference in the complaint to the said George A. Newhall. There is no averment that he is one of the conspirators, but he is charged by innuendo and inference with the violation of law, and being connected with the crime of false arrest and false imprisonment.

It is further alleged that the defendant and his confederates forcibly, maliciously, and feloniously assaulted the children May and Sarah, and feloniously cut off the hair of the said two children. It is alleged that the trial and hearing in the superior court was destitute of any element of fairness, good faith, or candor, and was a travesty upon justice; that at the pretended trial defendant caused himself to be made a witness, although he knew nothing, and feigned to give testimony against plaintiff, and to prejudice the court wrongfully against plaintiff; that defendant testified that the wife of plaintiff had once borrowed two dollars of defendant, and had tried to sell him a collie dog; that the defendant and his confederates fraudulently repeated and made to the treasurer of the city and county of San Francisco their false and fraudulent representations and pretenses, and by means thereof obtained from him and out of the public treasury of the said city and county, and thereupon fraudulently and feloniously converted to their own private use, $250 and upwards belonging to said city and county; that the defendant and his confederates gave the child Sarah many presents of clothing and trinkets, caused her teeth to be filled, and kept her at various schools.

There are many other allegations and charges contained in this complaint of the same character; and in plaintiff's brief in support of the complaint it is admitted that the complaint charges that the

defendant and his confederates committed 12 crimes of felony and 39 crimes of misdemeanor, as follows: Five crimes of child stealing (5 felonies) ; 2 crimes of kidnapping (2 felonies) ; 5 crimes of false imprisonment, effected by violence, menace, fraud, and deceit (12 felonies in all) ; 12 crimes of assault, 2 crimes of assault and battery, 8 crimes of false arrest, 7 crimes of libel, 7 crimes of criminal contempt of court, and 3 crimes of criminal conspiracy (in all, 39 crimes of misdemeanor). It will not be necessary to refer to these charges more in detail. It is sufficient to say that they are irrelevant and immaterial to the main charge, which has been considered, even if that charge could be sustained as a statement of a cause of action.

The court is of the opinion that this complaint, containing these scurrilous and scandalous charges, ought not, under the circumstances, to be allowed to remain on the files of the court. The motion of the defendant to strike the complaint from the files is therefore granted.