**James SHARP, Jr.,**

v.

**Mrs. Mae LUCKY, Registrar of Voters, Ouachita Parish.**

**Civ. A. No. 5734.**

United States District Court
W. D. Louisiana,
Monroe Division.

Jan. 30, 1957.

James Sharp, Jr., Monroe, La., for plaintiff.

Albin P. Lassiter, Dist. Atty., Ouachita Parish, Fred Fudickar, Jr., Monroe, La., Jack P. F. Gremillion, Atty. Gen. of Louisiana, George M. Ponder, First Asst. Atty. Gen. of Louisiana, William C. Bradley and Kenneth C. Banfield, Jr., Sp. Counsel to the Atty. Gen. of Louisiana, for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Plaintiff is a Negro citizen of Louisiana, who has been licensed to practice law by the Supreme Court of this State. He is a registered voter. He brings this action against defendant, who also is a Louisiana citizen, in her official capacity

as Registrar of Voters for Ouachita Parish, Louisiana.

Plaintiff claims that his rights of citizenship, under the Fourteenth and Fifteenth Amendments to the United States Constitution, have been violated by defendant; and seeks to invoke jurisdiction here under 28 U.S.C.A. §§ 1343 and 1357. He apparently also seeks a declaratory judgment under 28 U.S.C.A. § 2201 et seq., although that Section of the Judicial Code is not cited in his complaint.

The prayer is for a decree that 1) " * * * the defendant has refused to permit plaintiff and the class he represent (sic) register to vote and answer, reply or adjust matters in her office solely because of their race and color * * ." in violation of the Fourteenth and Fifteenth Amendments; 2) that defendant " * * * and her successors in office be ordered to cease, desist and refrain from arbitrarily and capriciously discriminating and segregating (sic) against plaintiff and any members of the class he represent (sic) and Negroes generally in her office solely because of their color and race"; 3) that a permanent injunction to that effect be issued; 4) that plaintiff have judgment against defendant in damages for $25,000.

As appears from the language quoted, he also attempts to bring the suit as a class action under Rule 23(a), Fed.Rules Civ.Proc., 28 U.S.C.A., on the ground that the class which he allegedly represents, " * * * namely, Negro citizens of the State of Louisiana, similarly situated, who *are* (emphasis ours) duly qualified electors under the Constitution and laws of the United States and of the State of Louisiana * * * " are " * * * so numerous as to make it impracticable to bring them all before the Court and for this reason plaintiff prosecutes this action in his own behalf and in behalf of the class without specifically naming them in this petition."

Briefly, stripped of conclusions and superfluities, the complaint makes the following allegations: That on August 25, 1956, plaintiff went to defendant's office in the Ouachita Parish Court House during regular business hours " * * * *as the attorney* for one Willie L. Tillman, *for the purpose of advising his client* whether or not his registration card was incorrectly filled out; that plaintiff *was so employed* because he had received a letter from the office of the Registrar advising in substance that his card was not properly filled (sic) and that he must appear within ten days and make out a new registration card"; while at defendant's office, " * * * they were immediately advised that Negroes would have to go to the police jury room to be waited on and that only white persons could be waited on in her office"; "That plaintiff told defendant his name and presented to defendant his membership card for the Louisiana State Bar Association and told her *he represented* Willie L. Tillman and wanted to see his card for the prupose (sic) of answering her correspondence to him; that defendant advised that all the cards for Negroes were in the police jury room and only cards for white persons were in her office and only white persons were waited on in there and that defendant handled all white persons and her assistant Mrs. Morin took care of all colored people"; "That defendant refused to let plaintiff and his client see his card and comply with her letter *in her office* soley (sic) because they are Negroes and that she has and is at present segregating Negroes in her office soley (sic) on the basis of their race. That she has entertained questions of White Attorneys relative to cards of their clients in her office and also questions concerning same from ordinary business citizens * * * "; "That because of the acts of defendant as above stated plaintiff's *client* has lost his status as a voter in Ouachita Parish all because plaintiff was *prevented from representing his client* soley (sic) because of his race; that consequently plaintiff has been damaged *in his profession* to the extent of twenty-five thousand and no/100 ($25,000.00) dollars." (All emphasis ours.)

■ Defendant has filed a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief

can be granted. Oral arguments on the motion were heard on December 27, 1956. At that time defendant's counsel already had filed their brief, on December 19, 1956. Plaintiff, representing himself, insisted that the Court render an immediate decision upon the motion, but we declined to do so and fixed a delay of ten days from the date of the hearing within which he was to file a brief in opposition to the motion. Notwithstanding this, he has not seen fit to favor us with a brief, or any citation of authority; but, rather than rely simply upon the oral argument, and authorities cited by defendant's counsel, we have thoroughly researched the questions presented and believe we have arrived at a sound and satisfactory answer to them.

It is important, we think, in analyzing plaintiff's charges against defendant, to take note of what facts he does *not* allege in his complaint, as well as what he affirmatively avers; i. e., absence of jurisdiction will more clearly appear by enumeration of its deficiencies. He does *not* allege that *his* registration as a voter was challenged or cancelled. He does *not* allege that he was refused all access to his client's registration card, but simply was told that it was in another room in the Court House. He does *not* allege that defendant caused or permitted his client's registration to be challenged improperly or illegally, or that it was cancelled in a discriminatory manner. He does *not* allege that defendant's assistant, Mrs. Morin, refused to let him see his client's card, and does *not* allege that he even asked her to let him see it. He does *not* allege that the Police Jury Room is not equally as accessible, convenient, comfortable or useful as any other room in the Court House, and he does *not* allege that he could not have transacted his business there as well as at another place. Moreover, he does *not* even allege that he legally could have succeeded in getting his client's registration reinstated, no matter where his card was kept.

In short, all he actually complains about is that the registration cards of white voters and those of Negro voters were kept in different rooms; and in effect that, because of this, he refused to go to the room or office where his client's card was kept, although he was perfectly free to do so.

There has been much controversy, in recent times, on many aspects of segregation, but we believe this is the first time any Court has been asked to enjoin the segregation of inanimate objects. No Court has extended the Constitution that far, and we certainly will not do so.

In the final analysis, what plaintiff asserts here is that, as a lawyer, he "lost his case", simply because of what he refused to do, not because of what defendant did or failed to do. Without regard to the merits or demerits of his client's position, which is not before us since the client has not sued, he asks us to grant a harsh remedy, not for the protection or vindication of any of his Federal constitutional or statutory, 42 U.S.C.A. §§ 1971, 1981 et seq., rights, but merely to foster and promote his decisions and activities as a lawyer. That we cannot and will not do.

As long ago as December, 1872, shortly after the adoption of the Fourteenth Amendment and enactment of the so-called Civil Rights laws by Congress, the Supreme Court of the United States, in Bradwell v. State of Illinois, 16 Wall. 130, 21 L.Ed. 442, held that the right to practice law is not a Federal right, the privileges and immunities of which are guaranteed by the Federal Constitution, but is merely a license or privilege which may be granted, taken away, or regulated by the sovereign States. In that case the plaintiff was a woman who, otherwise fully qualified, had been denied a license to practice law by the Supreme Court of Illinois. In affirming that Court's decision, the United States Supreme Court said:

"In regard to that amendment counsel for the plaintiff in this court truly says that there are certain privileges and immunities which belong to a citizen of the United States as such; otherwise it would be non-

sense for the fourteenth amendment to prohibit a State from abridging them, and he proceeds to argue that admission to the bar of a State of a person who possesses the requisite learning and character is one of those which a State may not deny.

"In this latter proposition we are not able to concur with counsel. *We agree with him that there are privileges and immunities belonging to citizens of the United States, in that relation and character, and that it is these and these alone which a State is forbidden to abridge. But the right to admission to practice in the courts of a State is not one of them. This right in no sense depends on citizenship of the United States. It has not, as far as we know, ever been made in any State, or in any case, to depend on citizenship at all. Certainly many prominent and distinguished lawyers have been admitted to practice, both in the State and Federal courts, who were not citizens of the United States or of any State. * * ***

* * * * *

"* * * *the right to control and regulate the granting of license to practice law in the courts of a State is one of those powers which are not transferred for its protection to the Federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license.*" (Emphasis supplied.)

Again, in October, 1893, in In re Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L. Ed. 929, the Court reaffirmed its holding in the following language:

"* * * Our interposition seems to be invoked upon the ground that petitioner has been denied a privilege or immunity belonging to her as a citizen of the United States, and enjoyed by the women of Virginia, in contravention of the second section of article 4 of the constitu-

tion and of the fourteenth amendment.

* * * * *

"In Bradwell v. State, 16 Wall. 130 [21 L.Ed. 442], it was held that the right to practise law in the state courts was not a privilege or immunity of a citizen of the United States; that the right to control and regulate the granting of license to practise law in the courts of a state is one of those powers that was not transferred for its protection to the federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license."

In September, 1894, in Green v. Elbert, 63 F. 308, 309, the Court of Appeals for the Eighth Circuit, in passing upon a suit for damages brought under the same Federal Civil Rights Statutes here invoked, on account of an alleged conspiracy to deprive a lawyer of the right to practice law, held:

"A conspiracy to deprive a lawyer of his right to practice law in a state court is not a conspiracy to interfere with any right or privilege granted, secured, or protected by the constitution or laws of the United States. There is no act of congress conferring on the courts of the United States jurisdiction over a civil suit for damages resulting from such a conspiracy, and it would be beyond the constitutional competency of congress to pass such an act. * * "

Again, in November, 1938, the Court of Appeals for the Ninth Circuit, in Mitchell v. Greenough, 100 F.2d 184, 185, in another suit for damages on account of an alleged conspiracy to deprive that plaintiff of the right to practice law, held that such was not a violation of the Federal Civil Rights Statutes, and that the District Court wherein the suit was filed had no jurisdiction to entertain such a suit:

"* * * The conspiracy charged is claimed to come under the provisions of the federal statutes (8

U.S.C.A. §§ 43, 47 [now 42 U.S.C.A. §§ 1983, 1985], supra). We pause here to observe that the right to practice law in the state court has been held by the Supreme Court not to be a privilege granted by the Federal Constitution or laws. * * " (Citation in brackets ours.)

■ It is plain, therefore, that we do not have jurisdiction of this case. Only a State, not a Federal, privilege is sought to be enforced. The assertions of Federal questions are merely colorable and insubstantial, Charlton v. City of Hialeah, 5 Cir., 188 F.2d 421; Hewitt v. City of Jacksonville, 5 Cir., 188 F.2d 423; Yglesias v. Gulfstream Park Racing Ass'n, 5 Cir., 201 F.2d 817; McGuire v. Todd, 5 Cir., 198 F.2d 60; Dinneen v. Williams, 9 Cir., 219 F.2d 428. Since there is no diversity of citizenship present, both plaintiff and defendant being citizens of Louisiana, we likewise have no jurisdiction under 28 U.S.C.A. § 1332.

■ If jurisdiction existed, still plaintiff could not maintain this as a class action, because his right to practice law is purely personal, his voter registration has not been cancelled, and there is no showing that he does or can genuinely represent the class whose interests he purports to champion. As stated by the Court of Appeals for the Fifth Circuit in Brown v. Board of Trustees of La-Grange Ind. Sch. Dist., 187 F.2d 20, 25:

" * * * plaintiff has wholly failed to plead or prove any deprivation *of his civil rights* and *it is elementary that he has no standing to sue for the deprivation of the civil rights of others.* * * * "

See also Martinez v. Maverick County Water Con. & Imp. Dist. No. 1, 5 Cir., 219 F.2d 666.

Moreover, even if we had jurisdiction of the action, plaintiff has failed utterly to state a claim, valid in law, upon which any relief can be granted.

For these reasons, the motion to dismiss must be granted.

Present proper decree for signature.