[No. 15301.  Department Two.  September 18, 1919.]

E. I. DuPONT DE NEMOURS POWDER COMPANY, *Appellant,*
v. HANS PEDERSON *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES (91)—FRAUD—EVIDENCE—SUFFICIENCY.
Under the presumption that a transaction has been honestly made,
and the rule that proof of fraud must be clear and satisfactory,
quitclaim deeds by a debtor, pending a suit, will not be held fraud-
ulent as to creditors, where one of them was intended as a mortgage
to secure a *bona fide* debt, and the other was to pay an antecedent
debt and upon sufficient consideration.

MORTGAGES (22)—PAROL EVIDENCE AS TO DEED.  Oral evidence is
admissible to prove that an absolute deed was intended as a
mortgage.

FRAUDULENT CONVEYANCES (88)—EVIDENCE—ADMISSIBILITY.  In an
action to set aside a deed as fraudulent as to creditors, the ques-
tion as to whether the deed was antecedent to a judgment against
the grantor, and therefore subject to the judgment, is not in issue,
since the lien of the judgment may be enforced without recourse to
such an action.

Appeal from a judgment of the superior court for
King county, Tallman, J., entered December 23, 1918,
in favor of the defendants, in an action to set aside
deeds for fraud, tried to the court.  Affirmed.

*Trefethen & Findley,* for appellant.

*Roberts & Skeel,* for respondents.

BRIDGES, J.—On the 18th day of May, 1917, Hans
Pederson and wife were the owners of lot 15, block 41,
Denny & Hoyt's addition to the city of Seattle (which
will be hereafter referred to as the Fourth street prop-
erty), and lot 3, block 10, Kinnear's supplemental ad-
dition to Seattle, and lot 3, block L, W. N. Bell's 5th
addition to Seattle, all in King county, Washington.
On that date, they made a quitclaim deed of all the
property mentioned to Geo. L. Haley, of Seattle.

[1]Reported in 184 Pac. 316.

Thereafter, and on the 16th day of January, 1918, Haley and wife deeded to Millie Madison all of the property except the Fourth street lot. On December 15, 1917, the appellant, in another action, obtained a judgment in excess of $17,000 against the respondents Pederson and wife. It issued execution, which was returned *nulla bona,* and being unable to find property of Pederson and wife out of which to satisfy its judgment, or any part of it, it brought this suit to set aside the transfers above mentioned. The complaint alleged that these transfers were without valid consideration and were fraudulently made for the purpose of defeating the creditors of the respondents Pederson and wife, and particularly the appellant. The several respondents answered separately, admitting the execution and delivery of the deeds mentioned, but denying all other allegations of the complaint. From judgment dismissing the action and quieting title in Millie Madison, this appeal is taken.

The testimony is very lengthy and we cannot here pretend to set it forth in detail; we will, however, undertake to give a general summary of it. The appellant relied almost exclusively upon the testimony of two witnesses. One testified that Mr. Haley had told him that the properties which had been deeded were really owned by Mr. Pederson, though he held the "paper" title to a part thereof, and Millie Madison held the "paper" title to the remainder. Another of appellant's witnesses testified that Mr. Haley had told him that he, Haley, held the property in trust for Pederson, and that the property was deeded to him because Pederson anticipated the appellant would obtain a judgment against him, and he did not want to have the property in his name if such judgment were obtained. It further appeared from appellant's testimony that, at about the time the deed from Haley to

Madison was given, Pederson constructed an apartment house on lot 3, block L, Bell's 5th addition to Seattle, being a part of the property involved in this action; that, while the title to the lot was in the name of Millie Madison, respondent Pederson did practically everything pertaining to the construction of the apartment; he looked after obtaining a loan of $24,000 for the purpose of building the apartment house; much of the materials going into the building were obtained on his credit; he made arrangements for the renting of the apartments, took the rents, and deposited the money so collected in the bank in his own name. The respondent's testimony showed that Pederson and Haley were, and for a long time had been, intimate friends and business associates; that Pederson was a contractor and builder, and that he had gotten into financial straits and had called upon his friend Haley to assist him; that, in this way, at the time of the delivery of the deed from Pederson to Haley, the former had become indebted to the latter in the sum of about $6,000 for services performed and money advanced to or for Pederson; that, in addition thereto, Haley had signed bonds and other obligations for the use and benefit of Pederson; that the deed from Pederson to Haley was given to secure Haley for the indebtedness which was owing from Pederson to Haley, and that, as a matter of fact, the deed was, and was intended to be, a mortgage, and that, at the time of the trial in the lower court, Pederson was still indebted to Haley in certain sums of money. The evidence does not show the exact amount of such indebtedness, but that the amount was considerable, there can be no doubt.

About January, 1918, Haley wanted some of the money which Pederson owed him, and the latter, in

order to get the money, had Millie Madison make sale of a $2,500 note and mortgage held by her, the proceeds of which were turned over to Pederson. In addition to this indebtedness of $2,500, Pederson also owed Miss Madison and her two brothers, who were at the war, certain additional but undetermined sums of money. Upon paying this $2,500 to Mr. Haley, Mr. Pederson requested him to deed directly to Miss Madison all of the property above mentioned except the Fourth street property, which it was agreed Haley should continue to hold as security. Haley complied with this request and made the deed to Miss Madison. It further appears conclusively that Pederson was the uncle of Miss Madison and her brothers and had been administrator of their father's estate, and had been guardian of one or more of them, and that he, Pederson, had for a long time looked after their business affairs.

We have not only read carefully the abstracts of the testimony as presented by the parties hereto, but we have been at pains to read the statement of facts itself, and our conclusion is that the deed to the Fourth street property now held by Haley is a mortgage, and that, while Haley is the owner of the record title, Pederson and wife are the equitable owners; that the title to the property deeded to Millie Madison now rests absolutely in her, and that a valid consideration was paid, and that there was no fraud in the giving or receiving of any of the deeds complained of. The conclusions to which we have come are strictly in accordance with the conclusions which the trial court reached.

While there are certain circumstances surrounding these transactions which are of a suspicious nature and present many badges of fraud, yet the court will always presume that a transaction has been honestly

made and carried out, and the evidence of fraud must be clear and satisfactory. *Rohrer v. Snyder,* 29 Wash. 199, 69 Pac. 748; *Roberts v. Washington National Bank,* 11 Wash. 550, 40 Pac. 225; *Smith v. Doty,* 91 Wash. 315, 157 Pac. 881; *National Surety Co. v. Udd,* 65 Wash. 471, 118 Pac. 347. The testimony fails to convince us of any fraud.

The appellant assigns a number of errors based on the permission given the respondents to testify as to what was the oral agreement between the respondents herein concerning the deeds in question. It has always been the rule in this court that oral testimony may be received to show that an instrument, which upon its face is a deed, is in fact a mortgage. *Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509; *Ross v. Howard,* 31 Wash. 393, 72 Pac. 74; *Barrow v. Barrow,* 34 Wash. 684, 76 Pac. 305. The appellant, however, seems to contend that Haley holds the title to this property in trust for Pederson. We do not think there is any trust relationship or question involved in this case, and consequently the cases cited by appellant concerning receiving oral testimony to prove or disprove a trust are inapplicable.

The appellant insisted before the trial court that the evidence showed that the lien of its judgment preceded the conveyance of the property to Miss Madison, and asked that court to decree that Miss Madison holds her title subject to the prior lien of the judgment. The trial court refused to make any findings or conclusion on this question. This ruling was right. This was a suit to set aside certain deeds to real estate because of alleged fraud. The only judgment the court could make would be either to find that there was fraud and set aside the deeds, or find that there was not fraud and dismiss the action. The question as to whether or not the plaintiff's judgment is a lien upon

any of the property is not involved in this case. If Millie Madison holds the title subject to lien of appellant's judgment, that lien may be enforced without recourse to such an action as this. Finding no error, the judgment is affirmed.

HOLCOMB,. C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.