[No. 27091. Department One. August 4, 1938.]

JAMES CHOUKAS, *Appellant,* v. NICK CARRAS *et al.,* *Respondents,* FRANK CASSOS *et al., Appellants.*[1]

*Frank S. Griffith* and *Joseph S. Ivers,* for appellants.

*Myers & Myers,* for respondents.

SIMPSON, J.—This action was instituted to restrain the sheriff of King county from selling upon execution certain real property standing in the name of James Choukas.

In his complaint, plaintiff alleged that he owned the real estate in question, namely, lot 6, block 103, Terry's Second Addition to Seattle, and the sheriff was about to sell it to satisfy a judgment obtained by Carras

[1]Reported in 81 P. (2d) 841.

Brothers against Frank Cassos and wife entered April 6, 1931.

Defendants Carras answered admitting the existence of the judgment, that the sheriff had levied on the property in question and was about to sell it to satisfy that judgment. By way of cross-complaint, they alleged that May 28, 1930, defendants Cassos and wife were indebted to Carras Brothers on account of groceries sold to them; that on that date and for several years prior thereto, Cassos and wife held the legal title to the land in controversy, and up to and until April 3, 1937, continued to be its true, actual, and equitable owners; that May 28, 1930, Cassos and wife executed without consideration a deed of the property to Nick Kasouchas, and on the same day Kasouchas executed to one Margaret Brickley a deed covering the property, which deed was intended as a mortgage, but no consideration passed to Kasouchas. It further alleged that Margaret Brickley, at the request of Cassos, transferred the property to James S. Karabas; that February 9, 1934, Karabas executed to the Home Owners' Loan Corporation a mortgage in the sum of seven thousand dollars, covering the real estate; and January 15, 1936, Karabas deeded the property to plaintiff.

In addition, they alleged that, at all times mentioned, Cassos and wife were the real owners of the real estate, and the various transfers were made for the purpose of hiding and secreting the real ownership and title to the real property, and that James S. Karabas and wife were false and fictitious names.

In a separate answer, the Cassos admit that, for several years prior to May 28, 1930, they held legal title to the real property involved here; allege they executed a deed on May 28, 1930, conveying this property to Kasouchas for a valuable consideration; and denied

the allegations of the cross-complaint of the Carras brothers.

Plaintiff and defendants Cassos put in issue the allegations of defendants Carras Brothers.

The case was tried by the court and judgment entered in favor of Carras Brothers approving the sale and dismissing the action brought against the sheriff. Plaintiff and defendants Frank Cassos and wife have appealed.

The evidence, which is quite involved, may be summarized as follows: The records of the transfer of the real estate indicate that May 28, 1930, Cassos and wife sold to Nick Kasouchas the property in question by warranty deed, and on the same day Kasouchas transferred the title to Margaret Brickley. The consideration recited in the two deeds was seven hundred dollars. July 15, 1932, Margaret Brickley by warranty deed conveyed the property to James S. Karabas, the consideration being named as ten dollars and other good and valuable considerations. Karabas transferred his title to appellant Choukas January 15, 1936, for a stated consideration of one thousand dollars.

For a period of time prior to May 30, 1930, appellant Cassos was engaged with his partner Charles James in a restaurant business in the city of Seattle. The Cassos also owned the real property in question, and have continued to live thereon since it was sold by them.

The evidence on behalf of appellant concerning the deed from Cassos to Kasouchas was to the effect that Cassos needed money to purchase the interest of his partner, and that he obtained it by selling his real estate. Kasouchas immediately deeded it to Margaret Brickley, secretary in the office of a realtor by the name of Hatupin. Cassos and Kasouchas testified it was a sale and there was paid to Cassos the sum of

seven hundred dollars. However, the testimony of Mr. Hatupin and admissions made by Cassos proved beyond doubt that the transfer to Margaret Brickley was made to obtain a small loan for Kasouchas or Cassos. After the title was in the name of Miss Brickley, certain improvements were made upon the front part of the building, which was being used as a store. These improvements were supervised by Cassos, but were completed before appellant Choukas purchased the property. It is clear that, up to the time Karabas made his purchase, the property was in fact that of Frank Cassos and wife.

It is the theory of respondents Carras that there was no such individual known as Karabas; that Cassos represented himself as Karabas during negotiations relative to improvements upon the property and the execution of the mortgage, and that some strange individual represented himself as Karabas when the deed was made to Choukas. Karabas did not appear at the trial. The testimony of witnesses indicated that Cassos did inquire about the improvements, but the evidence concerning the charge that he represented himself as Karabas was not very definite. Respondents introduced testimony of several witnesses who said they would have known Karabas if he was a Greek and lived in Seattle, but that no such person was known to them. No testimony was introduced to show that Karabas was a Greek.

Opposed to this testimony, which was negative in character, we have the positive testimony of several witnesses that Karabas and his wife lived in Seattle, took possession of the property after acquiring it from Miss Brickley, collected the rents from the store operator and other tenants. Mr. Frank Griffith, attorney of Seattle, was positive in his testimony that he had known Karabas and his wife for a year prior to the

time of the transfer to Choukas. Appellant Choukas, Cassos and wife, and Hollister, the store operator, were others who identified Karabas as the owner of the property.

Respondents' theory that Karabas and appellant Choukas held the property in trust for Cassos is not substantiated by the evidence submitted. Choukas lived on the property for a time when it was in the name of Cassos, but moved away several years before he secured title. He knew the other parties to this action, was a countryman of theirs, and visited them at various times. There is nothing in the record, however, to show that there was any agreement, express or implied, that he would hold the property in trust for Cassos. On the other hand, the evidence was to the effect that appellant Choukas had some money which he desired to invest, and thought he could safely purchase the property in question. The undisputed testimony of Choukas and Frank Griffith, his attorney, was that Choukas and Mr. and Mrs. Karabas went to the office of the attorney, where the deed was drawn by Mr. Griffith, signed and acknowledged by the grantors, and the purchase money paid to Karabas. Mr. Griffith testified in that regard that the amount of money given was one thousand dollars. He said:

"I counted it. Jim Choukas pulled out a roll of bills and asked me to count them and I counted them and laid them on the desk, and Mr. Karabas counted them and put them in his pocket and they walked out of the office."

 It is plain to us that a holding of fraud cannot be predicated upon the testimony introduced in this case. The evidence of respondents at the most presented no more than a suspicion that appellant Choukas was cooperating with Cassos in order to keep the property beyond the reach of creditors. Opposed

to the suspicious circumstances is the definite evidence to which we have just referred.

Fraud is never presumed, but must be proved by evidence that is clear, cogent, and convincing. *Jarvis v. Ireland,* 89 Wash. 286, 154 Pac. 455; *Du Pont D. N. Powder Co. v. Pederson,* 108 Wash. 335, 184 Pac. 316; *Russell v. Stephens,* 191 Wash. 314, 71 P. (2d) 30. The evidence produced in the case at bar does not meet the requirements of that rule. This case presents a situation where the court must consider definite positive testimony on the one hand, and on the other the opportunity for the execution of a fraudulent scheme.

In so holding, we are mindful of the rule frequently announced by this court that the finding of the trial court may not ordinarily be disturbed when founded on conflicting testimony.

We hold that the evidence produced by respondents at the trial was not legally sufficient to support the finding of fraud. No two cases of fraud rest upon exactly the same character of evidence, and consequently each must be determined on its own facts. *Wilson v. Mills,* 91 Wash. 71, 157 Pac. 467; *Forsyth v. Davis,* 152 Wash. 595, 278 Pac. 676.

We are of the opinion that respondents, Carras, have failed to show by the evidence presented either that Karabas and wife did not honestly and in fact convey actual legal title to appellant Choukas, or that Choukas was not a *bona fide* purchaser for value, or that he was holding the property in trust for Frank Cassos. However, since Kasouchas purchased the property in question from Cassos May 28, 1930, by a warranty deed which was filed of record May 29, 1930, and the Carras brothers did not obtain their judgment against Cassos until April 6, 1931, the Cassos having divested themselves of title prior to the date of the entry of the judgment, this judgment did not appear

of record as a lien against the property in question when Cassos executed the conveyance to Kasouchas, and thus could not appear as a lien against the property when Karabas conveyed to Choukas.

Rem. Rev. Stat., § 10605 [P. C. § 1643], provides:

"The auditor must file and record, with the record of deeds, grants, and transfers, certified copies of final judgments or decrees partitioning or affecting the title or possession of real property, any part of which is situated in the county of which he is recorder. Every such certified copy or partition, from the time of filing the same with the auditor for record, imparts notice to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lienholders, purchase and take with like notice and effect as if such copy or decree was a duly recorded deed, grant, or transfer."

Rem. Rev. Stat., § 10596-2 [P. C. § 1914-2], provides:

"A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record."

The deed from Cassos to Kasouchas, even if it was only a mortgage, having been duly recorded as a warranty deed, appellant Choukas, being a purchaser in good faith for a valuable consideration, is protected by our recording act. Choukas takes title to the property free from the judgment which the Carras brothers obtained against the Cassos, inasmuch as the judgment did not appear of record at or before the time the judgment debtors, Cassos, conveyed the property to

Kasouchas. *Tacoma Hotel, Inc. v. Morrison & Co.,* 193 Wash. 134, 74 P. (2d) 1003.

The judgment is reversed, with instruction to enter a judgment quieting title to the property in appellant Choukas.

HOLCOMB, MAIN, MILLARD, and GERAGHTY, JJ., concur.