[No. 28491.   Department One.   April 27, 1942.]

WILLIAM MATHEWSON, *Respondent*, v. A. R. CARLSON, *Defendant*, OMICRON COMPANY, INC., *Appellant*.[1]

[1]Reported in 125 P. (2d) 272.

*Patterson & Patterson,* for appellant.

*Irving D. Smith,* for respondent.

MAIN, J.—This action was brought for the recovery of money had and received. The defendant A. R. Carlson did not appear and was defaulted. The defendant Omicron Company, Inc., answered, denying the right of the plaintiff to recover, and pleaded an affirmative defense. The cause was tried to the court without a jury, and resulted in findings of fact sustaining the right of recovery against both defendants. Judgment was entered against both defendants in the sum of one thousand dollars, from which the Omicron Company, Inc., alone appealed.

The appellant was a corporation organized under the laws of this state, with its principal place of business in Seattle, and was the owner of the Fairhome apartments in that city, of which it was desirous of disposing. Leona Kirkpatrick was the owner of the Humphrey apartments in the same city. William Mathewson, the respondent, was the manager of the apartments for Mrs. Kirkpatrick, acting under a power of attorney from her which authorized him to collect all income and pay the accounts. Hazel Kirk, a niece of Mathewson, assisted him in the management of the apartments, and acted as bookkeeper and housekeeper.

Due to a physical disability of Mathewson, which

made it very difficult for him to sign his name, the money was deposited in the bank in the name of Miss Kirk, but she had no right to draw checks upon the account, except as directed by Mathewson.

A. R. Carlson, against whom a judgment was taken, was a real estate broker. August 1, 1940, he approached the president and manager of the appellant and suggested to him that he thought he had a purchaser for the Fairhome. The two men had had no previous acquaintance. On the 8th day of August, 1940, Carlson again came to the office of the appellant and showed to the president and manager what is called an earnest money receipt which purported to be signed by Mathewson. This matter was referred to another officer of the appellant, and that officer refused to accept the offer of purchase submitted to the board of directors unless Miss Kirk also signed the receipt. On the left-hand corner of this document there was written, in Miss Kirk's handwriting, this:

"It is understood that Wm. Mathewson is sole purchaser and I am signing no other documents regarding transaction. H.K."

The check for one thousand dollars which accompanied the earnest money receipt was signed by Miss Kirk alone. The receipt and the check were returned to Carlson, and, in time, he again appeared with Miss Kirk's name upon the receipt, as above stated. The matter was submitted to the board of directors and it was concluded to accept this offer rather than another one which the appellant had.

After the first time that Carlson approached the appellant and the time when the earnest money receipt and the check were presented, Carlson had certain negotiations with one Alec Hanna with reference to purchasing the Fairhome. The transaction that he apparently was hoping to put through was to have

Hanna purchase the Fairhome as an investment and resell it to Mathewson on easy payments. Carlson discussed the matter with Mathewson and was told by him that he had no money to invest. When Carlson got Miss Kirk's check for a thousand dollars, he told her that it would not be cashed; it would only be used for the purpose of indicating to Hanna that Mathewson had some financial ability. The check was drawn upon funds which accrued from the income of the Humphrey apartments. Hanna apparently lost interest in the matter and dropped out of the negotiations.

August 19th, the appellant wrote Miss Kirk that her offer of purchase had been accepted. At this time, she showed the letter to Mathewson, which was the first time, as they testified, that he had had any knowledge that Miss Kirk had given the check and signed his name to the earnest money receipt. They immediately went to the office of the appellant, saw the president manager, told him that what purported to be his (Mathewson's) signature upon the earnest money receipt was not his and was made without his authority or knowledge, and he demanded the return of the one thousand dollars. This was refused, and the check, which previously had been certified, was cashed by the appellant. Thereafter, and after the time fixed in the earnest money receipt for the consummation of the transaction, the money which had been deposited was forfeited. Subsequently, this action was brought, for the purpose above stated.

Two questions are to be considered upon this appeal, one of which is, whether Mathewson had a right to bring an action in his own name. The money deposited in the bank in Miss Kirk's name was the property of Mrs. Kirkpatrick. Rem. Rev. Stat., § 179 [P. C. § 8255], provides that every action shall be prosecuted in the name of the real party in interest,

"except as is otherwise provided by law." Section 180 [P. C. § 8256], provides that a trustee of an express trust

". . . may sue without joining the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another."

The contracts which Mathewson made with tenants in the apartment house, with employees, and with the bank, when money was deposited therein, were all made for the benefit of Mrs. Kirkpatrick.

An express trust is one created by the act of the parties, and, where a person has, or accepts possession of, money, with the express or implied understanding that he is not to hold it as his own absolute property, but to hold and apply it for certain specific purposes, an express trust exists. *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482; *Tucker v. Brown,* 199 Wash. 320, 92 P. (2d) 221; *Eichner v. Cahill,* 11 Wn. (2d) 108, 118 P. (2d) 419.

In this case, under the power of attorney, Mathewson was authorized to collect and receive all money, debts, dues, accounts owing and payable to Mrs. Kirkpatrick, and sue for the same in her name, or otherwise, for the recovery thereof. Whether the powers stated in the power of attorney, when properly construed, authorized him to bring an action in his own name, is a question which we pass without determination.

The other question presented has reference to the merits. The appellant contends that the trial court should have held that Mathewson knew of the signing of his name to the earnest money receipt by Miss Kirk and the giving of the check. Mathewson and

Miss Kirk both testified, unequivocally, that he had no such knowledge, and that Miss Kirk had signed his name to the earnest money receipt without his authority or knowledge. It may be admitted that Carlson obtained the receipt and the check by reason of false and fraudulent representations made to Miss Kirk. The appellant at no time had any knowledge that the transaction had been conceived in fraud practiced by Carlson until Mathewson and Miss Kirk called upon the president manager and told him the situation, and demanded that the money be returned, as above stated. The appellant goes into a detailed analysis of the testimony of Mathewson and Miss Kirk, and from it reasons that the testimony, when properly analyzed, shows that Mathewson knew and authorized that his name be placed upon the earnest money receipt, and that Miss Kirk had given the check.

The appellant invokes the well-known rule that fraud is never presumed, but must be proved by evidence that is clear, cogent, and convincing. *Choukas v. Carras,* 195 Wash. 659, 81 P. (2d) 841; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536.

The trial court found:

"That Hazel Kirk did not have authority to execute the check or copy of the earnest money receipt and she did so because of the said misrepresentation of defendant A. R. Carlson in the belief that it would result in her uncle the plaintiff getting the property, which she knew that he was negotiating about, and that she believed that defendant A. R. Carlson would return the check to her."

The trial judge saw and heard the testimony of Mathewson and Miss Kirk, and was in a much better position to determine whether they were telling the truth than we are. After giving attentive consideration to the testimony, we are of the opinion that the

trial court's finding based thereon should not be disturbed.

It has long been the rule in this court that the findings of a trial court will not be overturned unless we can say, from the record, that the evidence preponderates against them.

The appellant also calls attention to the rule that, in a case where one of two persons must suffer, the loss must be borne by him who made the loss possible. We see no place for the application of that rule, under the facts in this case. If Miss Kirk signed the earnest money receipt and delivered it and the check to Carlson without the knowledge or authority of Mathewson, there would be no contract, so far as he was concerned. Miss Kirk, by the note which she placed upon the corner of the earnest money receipt, made it plain that she personally had no interest in the transaction. Miss Kirk having signed Mathewson's name to the earnest money receipt without his knowledge or authority and having indicated, by a note which she placed upon the receipt, that she had no interest in the transaction, we see no basis, either in law or in equity, for the forfeiture of the money.

The judgment will be affirmed.

ROBINSON, C. J., MILLARD, STEINERT, and DRIVER, JJ., concur.