### VALENTINE v. POWERS et al.

#### Civ. No. 121.

United States District Court
D. Nebraska, Chadron Division.

Dec. 31, 1948.

nedy, citizens of Wyoming, and the other defendants, citizens of Nebraska and residents of Dawes County in that state. It involves the ownership of and title to certain oil and gas leases upon lands within the territorial area of the Chadron Division of the Court and certain rights and interests and contracts arising out of, and incident to those, and other leases.

The voluminous complaint alleges that Valentine Oil Company was and is a Nebraska corporation, having the plaintiff as its president; that by the express authorization of that corporation, and pursuant to a resolution "of said corporation" and on its account and for its benefit, the plaintiff, in his own name, entered into a written contract with Powers, in furtherance of which Powers acquired certain of the oil and gas leases, in which Powers was designated as lessee, but of which Powers, in his own right, and the plaintiff, ostensibly in his own name but actually as trustee for the oil company, were really the owners in equal shares. Alleging also the making of other contracts relating in part to other leases and oil operations in the same general area and the pursuit by the defendants, or some of them, of a course of action which he claims was designed to terminate, and destroy the value of, the interests of the oil company so represented by him, the plaintiff prays for injunctive relief against acts operative to work a forfeiture of the leases involved, including those taken by Powers, for the appointment of a receiver for the custody and conservation of the leases, for specific performance of alleged agreements to transfer interests under the leases to the plaintiff as trustee for the oil company, and for general equitable relief. Neither the basic averments of the complaint nor the complete demands of the prayer are fully reflected in the foregoing statement, which, however, seems adequate for the disclosure of the relation of the plaintiff to the transactions of which he complains and of the general objective of his pleading.

Process was seasonably served personally in Nebraska on the defendants other than Powers and Kennedy, upon each of whom service was made in Wyoming.

Eugene D. O'Sullivan, Arthur J. Whalen, Ernest S. Priesman and Eugene D. O'Sullivan, Jr., all of Omaha, Neb., for plaintiff.

Edwin D. Crites, of Chadron, Neb., for defendants other than Powers and Kennedy.

DELEHANT, District Judge.

The plaintiff instituted this action on April 12, 1948, against Powers and Ken-

Powers and Kennedy have made no appearance in the case; and it may be understood that the motions hereinafter referred to have been tendered by the Nebraska defendants only. Whether the service on Powers and Kennedy is strictly valid may be subject to question. Title 28 U.S.C.A. § 118, in force prior to September 1, 1948. See Title 28 U.S.C.A. § 1655 now effective. But no issue is now tendered respecting its regularity and no discussion upon that point will be volunteered.

A motion for security for costs has been complied with and requires no present attention.

With it, however, was also tendered a motion to dismiss the complaint; and that motion is the subject of this ruling.

 The motion to dismiss is grounded, first, on the asserted failure of the complaint to state a claim against the moving defendants upon which relief can be granted. The court does not consider that the argument of the defendants actually reaches this basis of the motion. However, putting aside for the present, the question of the plaintiff's capacity to sue, it is the view of the court that allegations are made against the defendants, within the framework of which proof might be made which would support the grant of relief. And that is the test of the validity of a complaint against a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A., Leimer v. State Mutual Assurance Co., 8 Cir., 108 F. 2d 302; Musteen v. Johnson, 8 Cir., 133 F. 2d 106; Sparks v. England, 8 Cir., 113 F.2d 579; Louisiana Farmers' Protective Union, Inc., v. Great Atlantic and Pacific Tea Co., 8 Cir., 131 F.2d 419; Cool v. International Shoe Co., 8 Cir., 142 F.2d 318; Publicity Building Realty Corp. v. Hannegan, 8 Cir., 139 F.2d 583; United States v. Arkansas Power & Light Co., 8 Cir., 165 F.2d 354.

Objection is made in the motion to the jurisdiction of the persons of the moving defendants. But it seems not to be relied upon or to have any merit.

 Evidently in support of specifications of (a) want of jurisdiction of the subject matter of the action, and (b) the improper resort to the District of Nebraska and this division as the venue of the action, the moving defendants point out the Wyoming residence and citizenship of Powers and Kennedy and the failure, thus far, to reach them with process actually served in Nebraska. But the failure to serve those two defendants in Nebraska can not affect the plaintiff's right to proceed against the Nebraska defendants who have been duly served within this state and have appeared, or to relief against them to the extent, if at all, that the facts may warrant the allowance of such relief and the judgments of this court be practicably enforceable as against the Nebraska defendants only. Rule 19(b). And Powers and Kennedy are suable in an action of this nature in this court and division. The subject matter and prayer of the complaint have to do with a claim upon real property located within the division, in an action for the protection of which, by Title 28 U.S.C.A. § 1655, see former Title 28 U.S. C.A. § 118, supra, the court may require the appearance of defendants residing beyond the state's borders, and cause notice of its order in that behalf to be given with binding effect. Vol. 17 Hughes on Federal Procedure p. 189, Sections 18,952, et seq., and cases cited; Rule 4(e), Federal Rules of Civil Procedure.

The moving defendants further support their motion by argument that the plaintiff's complaint discloses that he has no capacity to sue in the present action. Rule 17(a), Federal Rules of Civil Procedure contains the following language: "Every action shall be prosecuted in the name of the real party in interest; but (a) * * * trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another * * may sue in his own name without joining with him the party for whose benefit the action is brought." Essentially the same provision is contained in the codes of civil procedure of many states. Nebraska's may be cited. Section 25-301, R.S.Neb.1943 declares that, "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in sec-

tion 25-304." And the cited Section 25-304, so far as is presently material, provides that a "* * * trustee of an express trust, a person with whom or in whose name a contract is made for the benefit of another * * * may bring an action without joining with him the person for whose benefit it is prosecuted."

That the real party in interest to the claim made in the complaint is the Nebraska corporation, Valentine Oil Company, can hardly be questioned. And, if it were the plaintiff, or one of two plaintiffs, it is clear that this court could have no jurisdiction over the case. For the moving defendants correctly assert that, for federal court jurisdictional purposes, its citizenship is in Nebraska. See 35 C.J.S., Federal Courts, § 63, page 890, and cases cited. But the plaintiff claims the right to sue in his own name upon the ground that he is within the exception granted by Rule 17(a) to the requirement that any action be prosecuted by the real party in interest. And the court is persuaded that his position in that behalf is well taken.

Whether, in strict parlance, the plaintiff is—as he contends—the trustee of an express trust under the portion of the corporate resolution pleaded in the complaint need not be determined at this time with finality. Whatever may be the consequence of that partially quoted resolution, whose entire content is not disclosed to the court, the complaint clearly avers that the plaintiff made a contract with Powers for the benefit of the oil company in pursuance of which Powers acquired certain fully identified oil and gas leases under circumstances requiring him to convey interests in such leases to the plaintiff, in the latter's own name, but again for the benefit of the oil company. And such a course has frequently been held under the language of Rule 17(a) and comparable provisions in the several state codes of civil procedure to warrant the prosecution by the contracting party in his own name of a suit for the protection of the rights of the ultimate beneficiary of his action. Dixey v. Federal Compress & Warehouse Co., 8 Cir., 132 F.2d 275; Costanzo Coal Min. Co. v. Weirton Steel Co., 4 Cir., 150 F.2d 929, certiorari denied 326 U.S. 765, 66 S.Ct. 147, 90 L.Ed. 460; Meeker v. Waldron, 62 Neb. 689, 87 N.W. 539; O'Shea v. North American Hotel Co., 109 Neb. 317, 191 N.W. 321; Coe v. Nebraska Bldg. & Inv. Co., 110 Neb. 322, 193 N.W. 708; Nelson v. Cal Hirsch & Sons' Iron & Rail Co., 102 Mo.App. 498, 77 S.W. 590; Symmers v. Carroll, 207, N.Y. 632, 101 N. E. 698, 47 L.R.A.,N.S., 196 Ann.Cas.1914 C, 685; Eichner v. Cahill, 11 Wash.2d 108, 118 P.2d 419; Mathewson v. Carlson, 13 Wash.2d 363, 125 P.2d 272. Quite uniformly, decisions, applying equivalent language in statutes or procedural rules, have reached the conclusion that the authority under which a representative takes the title to real or personal property or choses in action in his own name for the benefit of others, and his action under such authority, consitute the representative a trustee of an express trust. And this is true despite informality in the language defining the status of the representative, or even in default of such language. (See citations most recently made).

However, a more persuasive ground of objection to the jurisdiction of this court over the action is finally and principally urged upon the court. It is charged that the plaintiff is not a citizen of Oklahoma, as he contends, but rather a citizen of Nebraska, and that there is no diversity of citizenship as between him and the Nebraska defendants. The parties have elected to submit the issue thus tendered by the serving and filing of affidavits and certified copies of records considered by them to be relevant to the question of the plaintiff's citizenship, and upon typewritten briefs which the court has carefully examined.

In an action brought in the United States District Court, where jurisdiction is premised on diversity of citizenship and a controversy in which the amount involved exceeds $3,000.00, the asserted grounds of jurisdiction may be challenged by answer or by motion. Rule 12(b), Federal Rules of Civil Procedure. And when such challenge is made, the plaintiff must support the traversed ground by competent proof, and carries the burden of proof

736

in respect of the issue thus arising. K. V. O. S., Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951. That the point may appropriately be raised by motion to dismiss is made clear by the language of Rule 12(b), supra, and is emphasized by the rulings in K.V.O.S., Inc., v. Associated Press, supra, and Gibbs v. Buck, supra. In the present instance the method of presenting proof was selected by the parties themselves. The court may readily perceive that a formal trial of the issue by the presentation of oral and documentary proofs and the cross examination of witnesses might have resulted in greater evidentiary certainty; but it has not seen fit to insist upon a technique of submission which the parties have probably regarded as unnecessary or unduly expensive.

The situs of the citizenship of C. M. Valentine at the time he instituted the action is the critical question. If he was then a citizen of Oklahoma, the case is properly here. If he was a citizen of Nebraska, this court is without jurisdiction, the motion is well taken, and the action should be dismissed. And it is citizenship that matters, not residence alone. Title 28 U.S.C.A. Section 41(1) in force prior to September 1, 1948 (more recently and now, Title 28 U.S.C.A. § 1332(a) (1); Jeffcoat v. Donovan 9 Cir., 135 F.2d 213; Tudor v. Leslie, D.C.Mass., 35 F.Supp. 969; Baker v. Keck, D.C.Ill., 13 F.Supp. 486; McHaney v. Cunningham D.C.La., 4 F.2d 725. It is recognized that one may reside temporarily in a state, with the fixed intent of retaining an established domicile in another state and of returning to that other state, without thereby acquiring citizenship in the state of temporary residence, all despite the familiar language of the Fourteenth Amendment to the constitution of the United States. Bradwell v. State, 16 Wall. 130, 83 U.S. 130, 21 L.Ed. 442. And while domicile may readily be distinguished from citizenship in some contexts, State v. Jackson 79 Vt. 504, 65 A. 657, 8 L.R.A.,N.S., 1245, nevertheless domicile and citizenship are substantially synonymous for the purposes of the statute relating to the jurisdiction of the United States District Courts on the ground of diversity of citizenship. And domicile involves the residence of the person in question in a particular place with the intention of remaining there for an indefinite time, and as a place of fixed present habitation. The inference of the status of a domicile from such residence with the intention just defined is not nullified by the circumstance that the person involved may entertain a floating intention to return to an earlier domicile at some future, but uncertain and indefinite, period. Story on Conflict of Laws 7th Ed. Section 46 page 41. Gilbert v. David, 235 U.S. 561, 35 S. Ct. 164, 59 L.Ed. 360.

The plaintiff correctly argues that, granting his right to bring this action in his own name and without joining the oil company as a party, the acknowledged Nebraska citizenship of that corporation, in whose interest he admittedly sues, is inoperative to defeat jurisdiction, if his own Oklahoma citizenship be established. Kelley v. Queeney, D.C.N.Y., 41 F.Supp. 1015; Prince v. New York Life Insurance. Co., D.C.Mass., 24 F.Supp. 41; 1 Cyclopedia of Federal Procedure, page 470.

The evidence relevant to citizenship which the parties have presented has been examined and considered in the light of the foregoing observations.

The plaintiff points to his averment in his positively verified complaint that he "was and now is a citizen and resident of Tulsa, Oklahoma". Supporting that contention he presents his own affidavit (filing 25) wherein he states that he is and for about twenty-two years has been a "citizen and resident" of Tulsa, Oklahoma, in which during that period he has maintained his legal residence; that he now claims that his home is in the Bliss Hotel, in Tulsa, in which he has, and for several years has had in storage "various personal belongings, effects and property" (the items and character of which he does not more particularly identify); that before taking up his residence in the Bliss Hotel,

he lived in the Mayo Hotel, also in Tulsa; that he has frequently stopped as a guest at various hotels, identifying six in Nebraska, and in registering for admission has consistently assigned Tulsa, Oklahoma as his place of residence; that at Chadron, Nebraska, he has lived in various hotels in which he has likewise registered as a resident of Tulsa; that any document which he may have signed attributing his residence, particularly his legal residence, to any place other than Tulsa was inadvertently signed and was never intended by him to signify more than a temporary stopping place; and that from time to time he has returned to the Bliss Hotel in Tulsa on visits, and intends to return there as soon as his oil operations in western Nebraska are terminated. In his affidavit he narrates in some detail, which need not be reflected here, the history of his participation in geological studies and exploration for oil and oil leasing operations in western Nebraska, extending with some continuity, though with varying and fluctuating activity, from the year 1915 down to the present time, and concludes with the following statement:

"* * * that because of the aforementioned reasons and discoveries your affiant determined to bide for a time and endeavor to see that the Chadron area was scientifically tested for oil and gas, and with that thought in mind he has returned from time to time through the intervening years, and has kept certain oil and gas leases alive on various tracts in the most attractive acreage in the Chadron, Nebraska area, but he has never declared or intended his residence to be in the State of Nebraska or in Chadron, Dawes County, Nebraska, during any of said trips and visitations to the State of Nebraska, but on the contrary he has always claimed his residence to be Tulsa, Oklahoma, and he is in the truth and fact now and at the time he filed the Petition in this case, a legal resident of Tulsa, Oklahoma; that he is stopping now at the Niles Hotel at Chadron, Nebraska, and is endeavoring to finish his explorations and drilling operations for gas and oil in the Chadron area, and for that reason alone he is now in Chadron, Nebraska; that your affiant further states that he is stopping over at Chadron, Nebraska, now solely and alone for the purposes, aforestated, and although same has been his place of abode for quite a length of time, yet same is not now and never was his permanent residence, but he stopped at Chadron, Nebraska, solely and only for the purpose of either proving the Chadron, Nebraska area to be a proper oil and gas area, or ascertaining that said area was not a proper area in which to explore for oil and gas; that affiant further states that his stay or stop-over at Chadron, Nebraska, has been prolonged longer than he intended, because of the acts and conduct of certain of the defendants named in the above-entitled case, who by their malicious and wrongful acts and conduct have been responsible for great loss of time and money to your affiant, and have succeeded in causing a complete shut down of plaintiff's drilling operations, because of their failure to perform promptly their contracts in the premises; that if said defendants had acted promptly and kept and performed their said agreements and contracts with the affiant and other interested parties, your affiant would not now be residing at the Niles Hotel at Chadron, Nebraska, and would by now have either proved the Chadron, Nebraska area worthless as an oil and gas field, or a productive gas and oil field and your affiant would have, in any eventuality resumed his Tulsa, Oklahoma residence; and further affiant sayeth not."

The plaintiff also submits an affidavit (filing 30) of an assistant to the manager of the Bliss Hotel at Tulsa who states therein that, within his knowledge, and plaintiff for the last twenty years has claimed Tulsa as his legal place of residence, and in the last ten or twelve years has had his legal abode first in the Mayo Hotel, and more recently and now in the Bliss Hotel where "he now has certain of his personal belongings and effects stored until he returns home". He also submits the affidavits (filings 26, 27, 28, 29, 31, 32, and 33) of some seven persons, associated with as many hotels in the cities of Chadron, Alliance, Omaha, North Platte and Scottsbluff, all in Nebraska, in which it is

stated that on registering at those several hotels, the plaintiff has consistently designated Tulsa, Oklahoma as his place of residence.

On their part, the moving defendants call attention to certain features of the plaintiff's own complaint which, they contend, dispute his claim of an Oklahoma residence and citizenship. They remind the court that he incorporated into the allegation touching his citizenship and residence the words, "and for some time last past has been residing temporarily at Chadron, Dawes County, Nebraska", and suggest that this constituted a minimization of the actuality of his residence at Chadron. Then, they point out the recital in the complaint's Exhibit A, being a copy of the alleged contract made April 8, 1947 between the plaintiff and Powers, wherein the plaintiff describes himself as "of Chadron, Nebraska", a like recital in Exhibit E, being a copy of an agreement between the same parties under date of August 7, 1947; and precisely identical language in Exhibit C, being a letter under date of August 22, 1947 from the plaintiff's attorney in behalf of the plaintiff addressed to Powers and demanding the latter's performance of obligations to the plaintiff relating to the subject of the present suit.

In addition, the moving defendants have presented other papers by way of evidence. One of these is the record of a divorce action in the District Court of Douglas County, Nebraska, in which the plaintiff was involved more than a quarter century ago, in which it was alleged, admitted and found that he was then a resident of Omaha, Douglas County, Nebraska. This court accords no present probative significance to that record. The lapse of time and other items of evidence indicating an intervening domicile elsewhere on which the defendants themselves rely sufficiently repel the presumption of the continuance of residence, which might otherwise be indulged in consequence of the Douglas County case. A second document is more persuasive. It is a copy of a petition filed by the present plaintiff in an action at law brought by him, as plaintiff, against one Richard H. Ross, as defendant, in the year 1945, in a state court in Dawes County, Nebraska. That petition was verified by the plaintiff and among its allegations was one that he was a "resident and citizen of Chadron, in Dawes County, Nebraska, and has been such for more than a year last past". That is one of the statements which the plaintiff seeks to explain as a mistake or inadvertence, upon the theory in the specific instance that, in verifying the petition, he was interested in its basic allegations of a cause of action "rather than the contents of the introductory paragraphs". But, it will at once be obvious that the recital of residence and citizenship in that petition was not an insignificant preliminary statement. By Section 25-1701 et seq., R.S.Neb.1943, a nonresident of the county in which such a suit is brought was and is required to "furnish a sufficient surety for costs" "before commencing such action", in peril of the dismissal of his suit upon motion and notice by the defendant, unless, within a reasonable time to be allowed by the court, the omission is supplied. And residence, in that setting, means something more than the status of a casual sojourner, although this court does not now affirm that it necessarily, or always, includes citizenship in the state. But, manifestly to repel the suggestion of nonresidence in the statutory sense, the pleader asserted, and the plaintiff swore, that he was both a resident and a citizen of Dawes County, Nebraska. This court can not reasonably suppose either that the inclusion of the significant statement of residence and citizenship was lightly inserted in the petition or that the plaintiff's verification of the pleading was reckless or actually false.

At the hearing upon the present motion, notice was given that the defendants' showing would later be supplemented by certain certified copies of records dealing with the registration of the ownership of an automobile, and the certificate of title thereto in favor of the plaintiff. At a later date, counsel for the moving defendants lodged with the court a letter, attached to which were the copies in question which the court has identified, filed and inserted in the files. Briefly reflected, they show (a) that as of March 1, 1943, the Oklahoma

Tax Commission issued a certificate of title covering a 1937 Studebaker sedan in favor of Chancey M. Valentine, Trustee, whose address was given as 523 Sunderland Building, Omaha, Nebraska, (b) that, on April 18, 1944, in Dawes County, Nebraska, for the purpose of obtaining a Nebraska certificate of title for the vehicle, the plaintiff, under oath, made an Affidavit and Verification of Residence in the following language:

"C. M. Valentine, (trustee), being first duly sworn upon oath, deposes and says; that he is a resident of Dawes County Nebraska, has maintained his residence at the Niles Hotel ~~Street,~~ Chadron, Nebraska, for the past No years, Six (6) months, having moved to this county from Tulsa, <sup>Town</sup> Oklahoma, on or about October 1st., 1943, <sub>State</sub> and does not claim residence in any other county or state. Employed by Valentine Oil Co., Inc of Omaha, Nebraska. Occupation geological research and oil development. Further affiant saith not.

"C. M. Valentine (Trustee)"
<sub>Affiant</sub>

(c) that on April 17, 1944, the County Clerk of Dawes County, Nebraska issued a certificate of title covering the automobile, stating that Chancey M. Valentine was its owner and that the owner's address was Chadron, Nebraska, (d) that on July 2, 1946, for the purpose of inducing the same county clerk to issue a certified copy of the certificate last mentioned, the plaintiff signed and swore to an affidavit in which he thrice stated his place of residence to be Chadron, Nebraska; and (e) that, authority therefor having previously been granted by the Title Section of the Motor Vehicle Division of the Department of Roads and Irrigation of the State of Nebraska, the county clerk issued the duplicate certificate in favor of Chancey M. Valentine, whose address was given as Chadron, Nebraska.

No attempt has been made here to recite every detail in the items of evidence presented by the several parties in relation to the issue of the plaintiff's citizenship. But the principal features of them have been set down and all of them have been considered by the court. It is undoubtedly true that not every possibly available circumstance bearing upon the question has been offered for the court's consideration. The record is silent upon such items as the details of the family associations of the plaintiff, his current marital status, the whereabouts of the members of his household, if any there be, his exercise, or neglect, of the privilege of voting, the place or places in which he has lately paid poll tax or personal taxes, the place where he has made federal income tax returns, if any. These features and others might have had some significance of greater or less persuasiveness in the controversy now being resolved. But the court determines it upon the record actually made.

In the face of the opposing showings, the court is convinced that the plaintiff has failed to establish by the preponderance of the evidence that, at the time of filing his complaint, he was a citizen of Oklahoma. In that conclusion full recognition is given to the distinction already adverted to between residence and citizenship, and to the importance of the domiciliary intent of the individual whose citizenship is under scrutiny. The plaintiff's statements respecting that intent both in his complaint and separate affidavit, and to hotel clerks on registering as a guest have been given substantial weight in the persuasion that he, more surely than any one else, is able to know his intent. Still, those statements may be, and have been, tested by several declarations which cast substantial doubt upon their reality and validity. These even include sworn statements by the plaintiff himself, one that he was on its date a citizen of Nebraska, another that he had "moved to this (Dawes) County from Tulsa, Oklahoma, on or about October 1st, 1943, and does not claim residence in any other county or state." The entire record upon the issue being considered, the court is convinced that the plaintiff has not established his alleged and challenged Oklahoma citizenship, and that he is rather a resident of, and domiciled in, Chadron, Nebraska, and a citizen of Nebraska.

Accordingly, by reason of the absence of a real diversity of citizenship be-

tween the plaintiff and the Nebraska defendants, the motion to dismiss for want of jurisdiction must be, and is being, sustained and the action is being dismissed for want of jurisdiction.

The restraining order allowed at the inception of the case is also being dissolved.